[No. 1676-1. Division One. November 26, 1973.]

RODNEY J. WINTERROTH, *Appellant,* v. MEATS, INC., *Respondent.*

8

*Geraghty, Geraghty, VanDerhoef & Sawyer* and *James D. Sawyer,* for appellant.

*Reed, McClure, Moceri & Thonn, P.S., William R. Hickman* and *Hugh A. McClure,* for respondent.

HOROWITZ, J.—Plaintiff employee, Winterroth, sued his employer, defendant Meats, Inc., covered under the industrial insurance act of Washington, to recover damages for injuries sustained by plaintiff from what he alleged was "the deliberate intention of his employer, Meats, Inc., to produce such injury and damage," within the meaning of RCW 51.24.020.

The sole question on defendant's motion for summary judgment was whether there was a genuine issue of material fact to show the "deliberate intention" within the meaning of the above statute as alleged in the complaint.

On September 23, 1969, plaintiff's hand was caught in a meat grinder he was operating for defendant, resulting in a traumatic amputation of the right hand and arm below the elbow. The grinding machine involved had a stainless steel table top with a 12-inch hole which provided vertical access to the mount of the grinder itself. The procedure involved required the workman to place the meat on the table top and manually force it down through the hole into the mouth of the grinder.

On November 23, 1971, plaintiff filed a complaint against defendant alleging that his injuries "were the result of

. . . the deliberate intention of his employer, Meats, Inc., to produce such injury and damage." In January 1972 defendant filed its answer in the nature of a general denial, pleading affirmatively that plaintiff's injuries were caused by his sole negligence and barred by reason of his assumption of the risk of injury. Subsequently, following the taking of certain discovery proceedings, defendant filed a motion for summary judgment supported by an affidavit of Byron Horton, plant supervisor, in which Horton stated in part that neither he nor any employee of Meats, Inc. had deliberately intended to injure the plaintiff. In opposition to the motion, plaintiff filed, among other things, a deposition of Maurice L. Kambarn, a safety inspector for the Department of Labor and Industries, in which Kambarn testified he had inspected defendant's plant and machinery on a number of occasions from May 1964 to June 1970, and on six separate occasions issued correction orders to defendant calling defendant's attention to the necessity of having a guard placed over the mouth of the grinder to prevent the operator from getting his hand caught. Kambarn further testified by deposition that a suitable guard was available and guards were in general use among other firms in the area.

In addition, plaintiff filed his own controverting affidavit stating how the injury occurred; setting out the details of defendant's failure to comply with the various correction orders from the Department of Labor and Industries, including furnishing the required guard and statements made by agents and employees of the defendant Meats, Inc. to him tending to show defendant knowingly failed and refused to comply with the correction measures issued by the Department of Labor and Industries for several years preceding the accident. He stated:

> Cross examination and further search of Meats, Inc. records, the examination and preservation of the subject meat grinder and table are also necessary and relevant to the many issues of this case.

He also stated: "Further discovery is necessary and essen-

tial." In a second affidavit he attacked the credibility of Byron W. Horton. In a third affidavit by one Jim Hamer, it was stated he had unsuccessfully attempted to obtain a statement from a named employee of Meats, Inc. "relative to the safety practices of that firm" and that "full discovery from Meats, Inc. employees for Mr. Winterroth is almost impossible." The court held the evidence insufficient to show Meats, Inc. had "the deliberate intention . . . to produce such injury and damage" within the meaning of RCW 51.24.020 and entered a summary judgment of dismissal. Plaintiff appeals.

■ Plaintiff contends summary judgment here is inappropriate because "[w]here state of mind is to be measured it cannot be resolved on summary judgment." *Riley-Stabler Constr. Co. v. Westinghouse Elec. Corp.*, 401 F.2d 526, 527 (5th Cir. 1968). *Preston v. Duncan*, 55 Wn.2d 678, 681-82, 349 P.2d 605 (1960), adopts a similar rule stating that where "different inferences may be drawn therefrom as to ultimate facts such as intent, knowledge, good faith, negligence, et cetera, a summary judgment would not be warranted." The question here, however, is whether the showing concerning the existence of the required intention was sufficient to show the existence of a genuine issue of material fact precluding the entry of summary judgment. We hold the showing insufficient and affirm.

The industrial insurance act, RCW 51, substitutes for the common-law remedies governing workmen's claims against employers for injuries received in employment covered by the act, statutory remedies in which liability based on fault is almost entirely eliminated. RCW 51.24.010 preserves a right of action against third parties not in the same employ who cause injury, and RCW 51.24.020 preserves a right of action against an employer for injuries or death resulting "from the deliberate intention of his employer to produce such injury or death." Our concern here is with the last-mentioned statute. It provides:

If injury . . . results to a workman from the deliberate intention of his employer to produce such injury

., . . . , the workman . . . shall have . . . [a] cause of action against the employer . . . for any excess of damages over the amount received . . . [under the industrial insurance act].

The phrase "deliberate intention of his employer to produce such injury" now contained in RCW 51.24.020 has been part of the industrial insurance act from its inception. Laws of 1911, ch. 74, § 6; Laws of 1919, ch. 131, § 5; Laws of 1927, ch. 310, § 5; Laws of 1957, ch. 70, § 24; Laws of 1961, ch. 23, § 51.24.020, now RCW 51.24.020. The phrase was construed in prior Washington cases beginning as long ago as 1922. *Biggs v. Donovan-Corkery Logging Co.,* 185 Wash. 284, 54 P.2d 235 (1936), discussing *Delthony v. Standard Furniture Co.,* 119 Wash. 298, 205 P. 379 (1922), and *Perry v. Beverage,* 121 Wash. 652, 209 P. 1102, 214 P. 146 (1922).

In *Biggs* plaintiff was injured when the cable used for log hauling snapped. The amended complaint alleged that the plant supervisor had been previously warned that the cable was badly damaged and "the superintendent only laughed and continued to use the same with an utter and deliberate disregard of the consequences of the act and of the safety of the employees." *Biggs v. Donovan-Corkery Logging Co., supra* at 286. It was also alleged that the cable was maintained in violation of several safety codes of which the employer was aware and which were knowingly breached. The court sustained a demurrer to the complaint and dismissed the action. The Supreme Court upheld the dismissal. The court reaffirmed *Delthony v. Standard Furniture Co., supra. Delthony,* on page 300, quoting from *Jenkins v. Carman Mfg. Co.,* 79 Ore. 448, 155 P. 703 (1916), approved the following definition of the statutory phrase "deliberate intention to produce the injury" contained in a substantially identical Oregon statute:

the lawmakers meant to imply that the employer must have determined to injure an employe and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross."

12

*Delthony* is cited with approval in *Biggs v. Donovan-Corkery Logging Co.*

Plaintiff is critical of *Biggs* and the prior Washington decisions followed in *Biggs*. He contends that subsequent changes in the statutory law protective of the workman, including the factory act (RCW 49.20.010), require that the definition of the quoted language be changed to include what amounts to gross misconduct and intentional violation of laws enacted for the safety of workmen. He seeks to distinguish the factual patterns in *Biggs* and the earlier cases with a view to showing that the misconduct in this case is of a more aggravated character than the conduct in the prior Washington cases. He relies in part upon certain California cases in which the statutory phrase defined is "serious and willful misconduct," *e.g., Parkhurst v. Industrial Accident Comm'n*, 20 Cal. 2d 826, 129 P.2d 113 (1942). He calls attention to the fact that the violation of the Washington safety statutes here involved is a criminal offense.

■ The phrase "serious and willful misconduct" is not necessarily equivalent to "deliberate intention of his employer to produce such injury." RCW 51.24.020. One may be guilty of serious and willful misconduct by knowingly refusing to comply with a statute or rule intended to protect a workman without necessarily having a "deliberate intention to produce such injury" to the employee. The phrase "serious and willful misconduct" may even be sufficient to constitute constructive intention. Constructive intention, however, is not the same as an actual and "specific intent" to injure. *See* J. Salmond, *Jurisprudence* § 89 (12th ed., P. Fitzgerald 1966). Byron Horton's affidavit in support of the motion for summary judgment denied any specific intent to injure plaintiff or to produce the injury which plaintiff sustained. The denial made a prima facie case, casting upon the plaintiff the necessity of making a showing of the facts upon which he relied to establish the specific intent to injure required. *Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.*, 78 Wn.2d 577, 478 P.2d

228 (1970); *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 438 P.2d 867, 31 A.L.R.3d 1413 (1968); *Almy v. Kvamme,* 63 Wn.2d 326, 387 P.2d 372 (1963); Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1, 13-15 (1970). Plaintiff's showing, however, was insufficient to establish at least prima facie that defendant had the specific intent required by the statute to produce the injury of which plaintiff complains.

 Plaintiff contends, however, that if the prior Washington cases cannot be distinguished, the rule announced in those cases should be changed. The difficulty we face is that the rule asked to be overthrown has been in effect for over 50 years. *Biggs,* in reaching its conclusion and in referring to two other Washington cases, stated:

> Those cases were both decided in 1922, should now be considered as precedents and not departed from without grave necessity

*Biggs v. Donovan-Corkery Logging Co., supra* at 288. It must be presumed that the legislature has been aware of the rule announced in 1922 and then reaffirmed in later decisions. It would have been a simple matter for the legislature to have changed the rule and adopted a broader exception so as to permit the action here if the legislature wished such change to be effected. This is all the more true because the legislature during the last 50 years has amended the industrial insurance act in a number of respects but has never changed the critical language contained in RCW 51.24.020. Instead, the language has been retained in four reenactments during the years. The reenactment of the statute without change after the Supreme Court of this state has construed the statute is in effect a legislative approval of the statute as construed. *McKinney v. McDonald's Estate,* 71 Wn.2d 262, 427 P.2d 974 (1967).

Plaintiff does not claim that further discovery proceedings would show that defendant had the specific intent to injure required by RCW 51.24.020 as theretofore construed by the Supreme Court. The expected discovery, rather, deals with additional evidence of gross negligence of the

14

defendant concerning which there is already an ample showing. The motion for summary judgment being ripe for hearing, the court did not abuse its discretion in proceeding to hear the motion and to dispose of it. *Shoberg v. Kelly,* 1 Wn. App. 673, 463 P.2d 280 (1969).

Affirmed.

FARRIS and WILLIAMS, JJ., concur.