[No. 2464-1. Division One. April 21, 1975.]

OWEN A. HIGLEY, *Appellant*, v. WEYERHAEUSER COMPANY *et al, Respondents.*

*Thom, Mussehl, Navoni, Hoff & Pierson* and *Bert H. Weinrich,* for appellant.

*Guttormsen, Scholfield & Stafford* and *Jack P. Scholfield,* for respondents.

SWANSON, J.—Owen A. Higley appeals from the trial court's summary judgment dismissing his complaint against Weyerhaeuser Company (hereinafter referred to as "Weyerhaeuser") seeking damages for loss of vision in his right eye allegedly caused by the deliberate intention of Weyerhaeuser to produce such injury within the meaning of RCW

51.24.020.[1] The sole question presented by Weyerhaeuser's motion for summary judgment was whether there was a genuine issue of material fact to show the "deliberate intention" required by the statute as the basis for Higley's lawsuit.

On October 13, 1972, Higley was employed as a quad saw operator in Weyerhaeuser's Mill No. 2 at Longview. While he was sitting in the quad saw operator's cage located in direct line with the saw's rotating cutterhead, a piece of the cutterhead broke loose, breaking through a plexiglass shield and driving a piece of the shield into Higley's right eye.[2]

On March 6, 1973, Higley filed a complaint against Weyerhaeuser alleging that "pursuant to RCW 51.24.020, the negligence and acts of omission on the part of [Weyerhaeuser] was [sic] so gross and irresponsible as to become tantamount to that of an intentional act." On March 20, 1973, Weyerhaeuser filed its answer denying any intention to injure Higley and claiming the immunity provided by the industrial insurance statute, RCW 51.04.010, et seq. Subsequently, based upon Higley's answers to interrogatories and the deposition of Weyerhaeuser employee Thoennes, Weyerhaeuser moved for summary judgment

---

[1]RCW 51.24.020, which states an exception to the immunity from suit otherwise granted under the state industrial insurance act which is applicable to Weyerhaeuser, provides:

If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, surviving spouse, child, or dependent of the workman shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any excess of damages over the amount received or receivable under this title.

[2]In answer to an interrogatory, Higley described the accident as follows: "Log rolled off chain. I shut the chain off. I lifted the hold down tires off of log and cutterhead broke. It came through ⅜ inch plexiglass above my head and a piece of plexi-glass slivered off. It (plexi-glass) then went in my eye.

"The glass that is supposed to protect the operation is not safety glass. After my accident they installed four thicknesses of glass and plexiglass. The cutterhead is poorly designed and has also been changed after my accident."

and also moved to defer time for answering Higley's interrogatories until after the summary judgment motion was decided. In opposition to the motion for summary judgment, Higley filed his own affidavit, together with the affidavits from five other Weyerhaeuser employees, which generally described the circumstances of Higley's accident, indicated the frequency of breaking and flying cutterheads, and stated the inadequacy of the plexiglass shielding and other measures taken by Weyerhaeuser to protect quad saw operators from cutterhead projectiles. On July 23, 1973, the trial court granted Weyerhaeuser's motion for summary judgment, and Higley filed timely notice of appeal.

On appeal, Higley presents three basic arguments in support of his contention that the trial court erred in granting Weyerhaeuser summary judgment. First, he argues that Weyerhaeuser committed a battery against him in that it took inadequate precautions to protect him from injury by flying cutterheads and therefore acted with knowledge that its actions were substantially certain to produce injury. He suggests that such knowledge constitutes a "deliberate intention" to harm him within the meaning of RCW 51.24.020. Second, Higley argues that if he were permitted further discovery, he would be able to establish facts sufficient to prove such "deliberate intention." Third, Higley argues that the granting of immunity from suit to Weyerhaeuser under the circumstances here is contrary to the public policy of the State favoring adequate compensation for injured employees and compliance with applicable safety regulations and laws.

■ We are of the opinion that *Winterroth v. Meats, Inc.*, 10 Wn. App. 7, 516 P.2d 522 (1973), is controlling in the resolution of this appeal and requires the rejection of the arguments raised herein. We deem it unnecessary to repeat what is said in *Winterroth*, except to note that, as in the case of the appellant there, Higley has failed to show that his employer had the *specific intent* to injure which is required to satisfy the exception contained in RCW

51.24.020. Moreover, it is apparent that no such specific intent could be proven by the further discovery Higley proposes.[3] Higley seeks to distinguish *Winterroth* on the ground that it involved the volitional act of an employee who put his hand into a meat machine, and he also suggests that the act of the employee there was not one done with knowledge of a substantial certainty that injury would result. In comparing *Winterroth* to this case, we are unable to accept the suggested distinction. Indeed, it would appear that the negligence of the employer there was significantly more serious than that alleged to be true of Weyerhaeuser. Further, the action of the *Winterroth* employee in placing his hand into the meat grinder—a risk common to the performance of his job—was no more voluntary than Higley's action of placing himself in the quad saw operator's cage to perform his job despite the risk of injury from flying cutterheads.

The judgment is affirmed.

FARRIS and ANDERSEN, JJ., concur.

Petition for rehearing denied June 11, 1975.

Review denied by Supreme Court July 29, 1975.

---

[3]In his brief, Higley states that further discovery would establish the following points, none of which indicates the *specific intent* required in *Winterroth*:

(1) Weyerhaeuser acted deliberately to produce the injury.

(2) Weyerhaeuser acted intentionally to produce the injury.

(3) Mill No. 2 follows the old saw mill adage that nothing gets fixed until someone is injured, which suggests deliberate intent to injure.

(4) Mill No. 2 has a policy of replacing mill workers after injury, rather than correcting or modifying dangerous mill machinery prior to injury for reason that the economic realities are such that the replacement of men is less costly than the correction or modification of dangerous machinery, which suggests deliberate intent to injure.

(5) Mill No. 2 was in violation of the Occupational Safety Health Act of 1970.

(6) Weyerhaeuser was in violation of Washington safety rules, regulations and laws.

(7) Mr. Higley's recovery under workmen's compensation would be approximately $7,200, RCW 51.32.080, whereas his loss of future income far exceeds such amount based on his salary of approximately $13,000 per year at time of the injury.

(8) Mill No. 2 as well as other possible employers considers Mr. Higley unemployable by reason of loss of the sight in his right eye.