No. 84-444

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

RANDAL J. NOONAN,

           Plaintiff and Appellant,

    -vs-

SPRING CREEK FOREST PRODUCTS, INC.,
a Montana corporation, and ROBERT
ULRICH,

           Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; Brent R. Cromley
        argued, Billings, Montana

    For Respondents:

        Crowley, Haughey, Hanson, Toole & Dietrich; L. Randall
        Bishop argued, Billings, Montana

Submitted: March 28, 1985

Decided: May 24, 1985

Filed: MAY 24 1985

*Ethel M. Harrison*

—————————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Randal Noonan appeals an order of the Yellowstone County District Court granting the motion for summary judgment of Spring Creek Forest Products, Inc. The trial court's order effectively dismissed the employee's civil action for damages based on intentional tort. We affirm.

Noonan was employed by Spring Creek as a wood planer operator in July of 1980. Spring Creek is a sawmill located near Judith Gap. This was Noonan's first full-time job as the nineteen-year-old had just graduated from high school.

The employee's job required him to feed rough-cut lumber through a planer to be milled to the proper dimensions. On December 22, 1980, a piece of wood became stuck in the planer. Noonan reached in to clear the chip of wood and his left hand was drawn into the machine resulting in serious injury.

Noonan submitted a claim for workers' compensation benefits which was granted. Appellant has received these benefits up through the present lawsuit.

This action was filed on April 22, 1983. Noonan alleged that the injury was the result of the employer's intentional action. Appellant sets forth the following facts in an affidavit and deposition.

1. The planer on which Randy Noonan was working was broken for approximately a month.

2. The employer had been requested to repair the planer but had failed to do so.

3. Randy Noonan had been told by his employer not to turn off the planer because it would slow down production.

4. Randy's foreman would sometimes come to work intoxicated and was intoxicated on the day of the accident.

5. The owners of Spring Creek knew that Randy's foreman worked while intoxicated.

6. No guard was on the planer.

7. The "on" and "off" switches were mislabeled by Spring Creek.

8. Randy was required to run the planer regardless of safety.

9. Spring Creek knew of prior accidents on the planer but concealed the fact of such accidents from Randy Noonan.

10. Spring Creek knew that it was in violation of OSHA Safety Regulations.

11. Spring Creek knew that plaintiff Randy Noonan would be required to retrieve pieces of wood from the planer.

12. If the planer had not been broken, it would not have been necessary for Randy to retrieve wood from the planer and lose his hand.

13. Spring Creek's policy was to run equipment, regardless of safety, until it broke, at which time employees would be laid off without pay.

The trial court granted the employer's motion for summary judgment upon the grounds that there were no genuine issues of material fact on whether the harm suffered was maliciously and specifically directed at the plaintiff out of which such specific intentional harm the plaintiff received injuries as a proximate result. This language of the court's order is from one of our recent decisions on intentional torts in the workplace. Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 610 P.2d 717.

3

A second basis for granting defendant's summary judgment was that Noonan had made an election of remedies by accepting workers' compensation benefits.

Noonan has raised the following issues:

1. Does a material issue of fact exist regarding the employer's intent to injure the employee so as to preclude summary judgment?

2. Has the employee effectively elected coverage under the Workers' Compensation Act, thereby precluding recovery of damages in a civil lawsuit?

3. Is the employee entitled to summary judgment on the issue of the employer's liability for the injury?

This appeal presents a question concerning the intentional tort exception to the exclusivity provision of the Workers' Compensation Act. Section 39-71-411, MCA. Appellant is essentially asking this Court to broaden Montana's intentional tort exception and recognize what is presently the minority view in the United States.

Concerning the issue of the employer's intent, Noonan alleges that the thirteen facts set forth above show an intent to injure. In his view, they show, at the least, a material issue of fact on the question of intent; therefore, summary judgment was improper.

Noonan relies on case law from a number of jurisdictions that have recognized an intentional tort in similar circumstances. The leading cases have arisen in Ohio and West Virginia. See Jones v. VIP Development Co. (Ohio 1984), 472 N.E. 2d 1046; Blankenship v. Cincinnati Milacron Chemicals, Inc. (Ohio 1982), 433 N.E.2d 572; Mandolidis v. Elkins Industries, Inc. (W. Va. 1978), 246 S.E.2d 907. What these cases have established is that a worker may pursue a cause of

4

action alleging intentional tort without showing the employer had a specific intent to injure. Ohio and other jurisdictions allow these intentional tort actions to proceed where the employer knows or believes that harm is a "substantially certain" consequence of the unsafe workplace. See for example, Shearer v. Homestake Min. Co. (S.D. 1983), 557 F.Supp. 549. The existence of this knowledge or intent may be inferred from the employer's conduct and surrounding circumstances.

Montana has chartered a course quite different from those states on the cutting edge of the minority trend. As recently as 1980 we held:

> ". . . the 'intentional harm' which removes an employer from the protection of the exclusivity clause of the Workers' Compensation Act is such harm as it maliciously and specifically directed at an employee, or class of employee out of which such specific intentional harm the employee receives injuries as a proximate result. Any incident involving a lesser degree of intent or general degree of negligence not pointed specifically and directly at the injured employee is barred by the exclusivity clause as a basis for recovery against the employer outside the Workers' Compensation Act." Great Western Sugar Co. v. District Court, 610 P.2d at 720.

Great Western is arguably distinguishable from the present case in that the injured worker there failed to allege intentional conduct on the part of his employer. Noonan, on the other hand, has clearly made the necessary allegations in his complaint, that if supported by the facts, would remove the cause of action from the exclusivity provision of the Workers' Compensation Act.

We have reviewed each of the plaintiff's alleged facts set forth above and fail to discern how any of the specific facts could be interpreted to mean harm was specifically

5

directed at Noonan. The facts do establish that the owners of Spring Creek operated a hazardous and dangerous workplace. The number of injuries that occurred among a relatively small number of workers provides ample support for this observation. However, to translate this situation into an inference of tortious intent on behalf of the employer would require a standard of law that this Court has thus far refused to adopt.

Where an employee's allegations go no further than to charge an employer with knowledge of a hazardous machine, the complaint does not state a cause outside the purview of our exclusive remedy statute. In so holding we are in accord with several jurisdictions that have reached this question. Fryman v. Electric Steam Radiator Corporation (Ky. 1955), 277 S.W.2d 25 (allegations that metal press was defective and dangerous and that employer was notified of unsafe condition of machine by prior operators were not sufficient to state cause of action on theory of employer's deliberate intent to injure employee); Duk Hwan Chung v. Fred Meyer, Inc. (Or. 1976), 556 P.2d 683 (employer's removal of safety switch on pie-cutting machine not sufficient to establish deliberate intent to injure employee); Jenkins v. Carman Mfg. Co. (Or. 1916), 155 P. 703 (employer's knowledge of broken condition of a roller on a lumber conveyor, failure to repair it, and direction to employee to work in its vicinity did not constitute a deliberate intent to produce injury); Higley v. Weyerhaeuser Company (Wash.App. 1975), 534 P.2d 596 (plaintiff's affidavit that eye injury was caused by inadequate plexiglas shielding in sawmill and owner's knowledge of flying cutter heads was not sufficient to establish deliberate intention).

6

The deposition, affidavits and pleadings before the District Court did not raise a genuine issue of material fact on the question of whether Spring Creek intentionally injured Randal Noonan. The lower court was solely confronted with a question of law. As our discussion has indicated, the court correctly construed the intentional harm exception to the exclusivity provision of the Workers' Compensation Act.

The summary judgment of the District Court is affirmed. By the nature of our decision the appellant's additional issues need not be reached.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr. concurs as follows:

I concur in the result but wish to add these comments.

Justice Hunt has done an able job, in his dissent, of demonstrating the similarity between "intent" and "willful conduct". There is sufficient evidence in this record to allow a factual determination if we apply a "willful" standard. The conscious disregard of others is the type of conduct that rises to the level of willfulness and were we to adopt such a standard for Workers' Compensation purposes this case should be permitted to go to a jury for resolution of the liability and damage questions.

I believe the legislature intended Workers' Compensation to be the exclusive remedy except in those situations where the defendant's conduct arose from specific intent rather than willfulness. In other words, an assault would allow a personal injury action. Gross negligence, such as we have here, would not.

Were we to open the door for personal injury actions where the defendant's conduct rises to a level of gross negligence or willfulness, I can foresee personal injury actions in many Workers' Compensation cases. Although there may be a basis in sound public policy for allowing this, I do not believe that is what the legislature intended.

Justice

Mr. Justice John C. Sheehy, dissenting:

I dissent. On April 22, 1983, Randal J. Noonan filed a complaint against Spring Creek Forest Products, Inc. and Robert Ulrich, alleging that his employer Spring Creek, and his foreman, Ulrich, had intentionally caused his injury in the workplace. Noonan demanded a jury trial. Although his right of trial by jury is secured to him by the Constitution and should remain inviolate, Article II, Section 26, Montana Constitution, 1972, the effect of the decision of the District Court and of the majority in this case is to deprive Noonan of his right to a jury trial where he has presented a genuine issue as to a material fact.

Noonan was injured on December 22, 1980. At 7 o'clock in the morning he had gone to work and at 7:15 the injury occurred. He was "running lumber" at a planer, when a piece of wood became caught between two rollers. He went down to reach in and pull it out. The two rollers to his left were broke and scraping, and he had reported the broken condition of the rollers about a month prior but they were never fixed. When he put his hand in there, he was caught in the rollers and pulled in. The skin of his left arm was pulled off from his wrist to his elbow, he lost three fingers and a thumb, had a toe transplantation, all necessitating a severe and painful recovery process.

The buttons controlling the start and stop of the planer were reversed, "they weren't hooked up right." Noonan reported that when something was wrong with the machine, "he ran it until it broke; you don't stop and fix."

Noonan was not the first to be injured at the planer. On November 19, 1979, Neil R. Miller received a chipped bone

9

in his right hand when he was removing a piece of wood from the planer and the roller caught his glove pulling his hand and arm between the rollers. Randal Noonan had earlier suffered a lacerated finger when he was pulling on a rope and slipped and struck a pulley on the planer. Robert Ulrich on August 12, 1980, suffered a smashed finger when he tried to remove a piece of wood which had been caught in the planer. Robert Ulrich also received a foreign body in an eye on September 18, 1980, when he was checking on the operation of the planer and a wood chip flew into his eye. Randal Noonan's accident happened on December 22, 1980.

In Great Western Sugar Company v. District Court (1980), 188 Mont. 1, 7, 610 P.2d 717, 720, this Court set out the test for "intentional harm" that removes an employer from the protection of the exclusivity clause of the Workers' Compensation Act, Section 39-71-411. If the harm is maliciously and specifically directed at a class of employee, and if out of such specific intentional harm an employee is injured as a proximate result, the test is met.

It should be axiomatic that the proof of malicious and specifically directed harm can be inferred from the facts and circumstances surrounding the occurrence. If that be not true, the only possible way for an employee to recover for an intentionally-caused injury from an employer would be the direct admission of the employer that he did in fact so willfully intend. Surely the law cannot be so constricted as to prevent a jury or other trier of fact from determining from all the surrounding facts and circumstances whether in fact the harm was malicious on the part of the employer and specifically directed at a class of employee working on the same machine. This Court has no trouble in criminal cases,

10

where the proof against the defendant must be beyond a reasonable doubt, that his criminal intent may be inferred from the facts established by witnesses and the circumstances developed by the evidence. State v. Welling (Mont. 1982), 647 P.2d 852, 39 St.Rep. 1215; State v. Weaver (Mont. 1981), 637 P.2d 23, 38 St.Rep. 2050. We have stated that intent to injure may be presumed from acts knowingly committed. State v. Brown (1959), 136 Mont. 382, 351 P.2d 219. This Court has no trouble holding that actual fraudulent intent within the meaning of the Uniform Fraudulent Conveyance Act may be established by circumstantial evidence. Montana National Bank v. Michels (Mont. 1981), 631 P.2d 1260, 1263, 38 St.Rep. 334, 337. What beguiling charm of intellect allows inferences to establish malicious intent in criminal cases, in fraudulent conveyances cases, but not in a case where a man's left arm is literally ripped to pieces?

I would hold in this case that a genuine issue of material fact exists here as to whether the employer maliciously and specifically directed intentional harm to the plaintiff. A jury should decide that issue.

From a reading of the District Court's memorandum granting summary judgment, I must conclude that the District Court was led off-base by another beguiling argument. The district judge principally felt that Noonan, in accepting Workers' Compensation benefits, had made an "election" which prevented him from suing the employer for intentional harm.

In this case the insurance company which protects Spring Creek from tort liability is also the insurer that provides coverage for its Workers' Compensation cases. The insurer, through Missoula Service Company, on December 30, 1980, invited Noonan to make an industrial accident claim by

11

sending him claim forms for compensation and assuring him that "you will receive all the benefits to which you are entitled according to law."

It is not inconsistent for Noonan to be receiving Workers' Compensation benefits at the same time that he is proceeding with his intentional harm claim against his employer. If he should lose the intentional harm claim, he is nevertheless undoubtedly entitled to Workers' Compensation benefits. If he should win his intentional harm claim, the payments provided by the employer under the Workers' Compensation Act would be an offset to any recover he might make on the intentional harm claim. Thus, the recoveries against the employer are merely cumulative; there is no inconsistency as far as Noonan is concerned, because on the same set of facts he is contending that an intentional harm occurred.

In Massett v. Anaconda Company (Mont. 1981), 630 P.2d 736, 739, 38 St.Rep. 961, 964, this Court held that an employee's application for a 30 year pension to his employer did not bar his claim for disability benefits from the same employer. In passing we said:

> "As a legal doctrine, election is the exercise of a choice of an alternate and inconsistent right or course of action. Full knowledge of the nature of inconsistent rights and the necessity of choosing between them are elements of the election. (Citing authority) (election of remedies presupposes the knowledge of alternatives with an opportunity for choice); (Citing authority) (in order that election of one remedial right shall bar another, the rights must be inconsistent and the election must be made with knowledge.) . . ."

In other cases we have held that an election of remedy exists only when a remedy is pursued to a final conclusion. State ex rel. Crowley v. District Court, Gallatin County (1939), 108 Mont. 89, 88 P.2d 23. We have said that an

12

apparent election made under a mistake as to rights is not binding as "election of remedies," Rowe v. Eggum (1938), 107 Mont. 378, 87 P.2d 189.

> "Mere acceptance of some compensation benefits, then, is not enough to constitute an election. There must also be evidence of conscious intent to elect a compensation remedy and to waive his other rights." 2A. Larson 12-117 to 12-121, § 67.35, (1983).

In this case it is clear that the remedies are cumulative, that Noonan has not procured a final disposition of his Workers' Compensation claim, that he plainly has not waived his right to sue for the intentional harm, and the mere acceptance of compensation does not constitute an election. The District Court clearly erred in giving effect to the doctrine of the election of remedies to grant summary judgment against Noonan.

Noonan has also asked us on appeal to grant him summary judgment as to the employer's liability on his intentional harm case. It is true that in the District Court, Spring Creek did nothing to disprove the facts and circumstances which give rise to the inference here of intentional harm by the employer. Still, for the same reason that I feel that summary judgment should not have been granted against Noonan, I feel that summary judgment should not be granted against Spring Creek. The issue of fact is for a trier of fact, in this case for the jury which was demanded.

I would reverse and remand for trial upon the merits of the plaintiff's claim of intentional tort.

John C. Sheehy
——————————————
Justice

13

Mr. Justice William E. Hunt, Sr., dissenting:

I respectfully dissent.

While I agree that the policy of Workers' Compensation is to protect the employer from employee tort action for injuries received during their employment, I believe there must be a limit on what the employee must tolerate. In my opinion in the case cited by the majority, for its present holding that the employee can not file a suit unless he can show that he personally was the victim of an intentional injury, this Court paved the way for recovery of an intentional tort. That case is Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 7, 610 P.2d 717, 720:

> "We hold that the 'intentional harm' which removes an employer from the protection of the exclusivity clause of the Workers' Compensation Act is such harm as it [sic] maliciously and specifically directed at an employee, or class of employee out of which such specific intentional harm the employee receives injuries as a proximate result. Any incident involving a lesser degree of intent or general degree of negligence not pointed specifically and directly at the injured employee is barred by the exclusivity clause as a basis for recovery against the employer outside the Workers' Compensation Act." (Emphasis added.)

In the case at bar the cause of action was fully pled, and in my opinion well and truly established a prima facie case for liability. To affirm a finding that none of the specific factual allegations could be interpreted to mean harm was "specifically directed" at Noonan, misses the point.

The unsafe workplace existed over a protracted period of time, within the full knowledge of the employer, amid various complaints by employees and was in reckless disregard of their safety. Such conduct, "specifically directs the harm at each and every employee."

- 14 -

The "intentional harm" we talked about in the Great Western Sugar Co. case, supra, does not, of course, refer to any degrees of negligent conduct. Nor does it imply such conduct must go so far as to constitute conduct similar to that of assault. A specific intent to cause harm is not necessary.

Rather, what we have here is the type of intentional conduct known as reckless disregard of safety. Perhaps it is best summed up in Restatement (Second) of Torts § 500, and the Special Note:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

> "Special Note: The conduct described in this Section is often called 'wanton or willful misconduct' both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another." (Emphasis added.)

Comment a following the Special Note distinguishes two types of recklessness:

> "a. Types of reckless conduct. Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it."

The conduct of Spring Creek comes within the former type. Although reckless disregard of safety is not akin to

- 15 -

the classic type of intentional tort, it nonetheless has a close relationship to other conduct which is intentional. Comment f, following the Restatement, supra, provides:

"f.     Intentional   misconduct   and   recklessness contrasted.     Reckless   misconduct   differs   from intentional    wrongdoing    in    a    very    important particular.    While  an  act  to  be  reckless  must  be intended by the actor, the actor does not intend to cause the harm which results from it.    It is enough that  he  realizes  or,  from  facts  which  he  knows, should  realize  that  there  is  a  strong  probability that  harm  may  result,  even  though  he  hopes  or  even expects    that    his    conduct    will    prove    harmless. However,  a  strong  probability  is  a  different  thing from  the  substantial  certainty  without  which  he cannot  be  said  to  intend  the  harm  in  which  his  act results."

Perhaps one reason the majority ruled as it did was because in alleging an "intentional injury," Noonan was inartful.   He did not base his claim on an assault, or battery, or any of that genre of intentional tort one readily thinks of when "intentional" injury is alleged.   Perhaps Noonan's complaint could have been better drafted.   But the District Court could have, and in my opinion should have, discerned that Spring Creek's reckless disregard for the safety of its employees embodied the intent element of Noonan's complaint.

The annotation in 96 A.L.R.3d 1064, et seq. (1979) provides an excellent discussion of the circumstances wherein various types of "intentional" conduct are not barred by the exclusive remedy provision of the Workers' Compensation Acts in several jurisdictions.   One case cited therein, Mandolidis v. Elkins Industries, Inc. and also cited in the majority opinion, supra, should be reviewed carefully by this Court. That case was described as being on the "cutting edge of the minority trend."     Most     importantly,     Mandolidis     is     not inconsistent with Great Western Sugar Co.   The majority

- 16 -

opinion concedes it is only "arguably distinguishable." The distinction lies in specific intent versus reckless disregard for safety. The similarity, however, lies in the fact that the unsafe conditions were specifically directed at a class of employees out of which the employee received injuries.

In my opinion, a distinction should be made between specific intent and reckless disregard of safety. Then, Noonan's allegation would present a question of fact, rendering summary judgment inappropriate.

One other thing by way of clarification that I would like to discuss is one of the issues that was raised by Noonan according to the majority opinion. That issue is as follows:

> "Has the employee effectively elected coverage under the Workers' Compensation Act, thereby precluding recovery of damages in a civil lawsuit?"

This question should never have been raised but since it has, it should be put to rest permanently. The answer to the question is no. If an employer has coverage, the employee is covered if he is injured at his place of employment and files a claim. This is true whether the injury is a result of an intentional harm or not. There is no provision in the law that allows an injured employee to refuse benefits of the Act in the unlikely event that he wanted to do so after he has filed a claim. Similarly, there is no provision for withholding benefits from an injured employee who meets the requirements of the Act. His benefits continue as long as he

is entitled to them or he recovers in his tort action. In that case, necessary adjustments will be made to offset any overpayment because of Workers' Compensation benefits that may exist.

_____
Justice

I concur with the foregoing dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice