[No. 62530-1. En Banc. October 26, 1995.]

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
IN
THERESA BIRKLID, ET AL., *Appellants*, v. THE BOEING COMPANY, *Appellee*.

854

*Schroeter, Goldmark & Bender*, by *James D. Hailey* and *Sidney S. Royer*; and *Casey & Gordon*, by *Randolph I. Gordon*, for appellants.

*Perkins Coie*, by *V.L. Woolston*, for appellee.

*John D. Fairley* on behalf of Washington Self-Insurers Association, *amicus curiae*.

TALMADGE, J. — While Washington law has recognized that industrial insurance is the exclusive remedy of the employee injured in the course of employment and barred lawsuits by employees against employers, by its enactment of the Industrial Insurance Act (IIA), the Legislature also established an exception to the rule of exclusivity for circumstances in which an employer deliberately injures an employee. In those circumstances, an employee retains the right to sue the employer.

In a case involving a conflict between the exclusivity provision of Washington's Industrial Insurance Act, RCW 51.04.010, and the deliberate intent to injure exception found in RCW 51.24.020, the United States Court of Appeals for the Ninth Circuit certified the following two questions to this court:

1. Whether the evidence produced by the plaintiffs in their response to the motion for summary judgment could, under Washington law, justify a jury in finding the "deliberate intention" exception specified in RCW 51.24.020, and, if so, the requirements of Washington law to permit such a finding?

2. Whether the evidence produced by the plaintiffs in their

response to motion for summary judgment could, under Washington law, justify a finding of "outrageous conduct" that would avoid the preclusion of RCW 51.04.010, and, if so, the requirements of Washington law to permit such a finding?

We hold under the circumstances of this case that the plaintiffs have established a claim for deliberate intention to injure under RCW 51.24.020, and have stated a limited cause of action for the tort of outrage.

## FACTS

Boeing began employing a new woven fiberglass cloth impregnated with phenol-formaldehyde resin in 1987 to meet FAA regulations on flammability. This material was used to make highly contoured interior parts of airplanes. Before it began using the material in production, Boeing did preproduction testing on it at its Auburn fabrication facility, Building 17-02. In February 1987, a Boeing general supervisor, Dan Johnson, wrote:

> During MR&D layup of phenolic pre-preg, obnoxious odors were present. Employees complained of dizziness, dryness in nose and throat, burning eyes, and upset stomach. We anticipate this problem to increase as temperatures rise and production increases.

Clerk's Papers at 115. Johnson requested improved ventilation, but Boeing management denied the request at that time, apparently for economic reasons:

> The odor level of the phenolic pre-pregs relative to other materials currently used in Shop A-3210 [Building 17-02] does not warrant expenditure of funds at this time.

Clerk's Papers at 115. The air in the production facility was "white with dust." Clerk's Papers at 118.

As Boeing's supervisor predicted, when full production began, workers experienced dermatitis, rashes, nausea, headaches, and dizziness. Workers passed out on the job. Mr. Johnson said he knew these complaints were reactions to working with the phenolic material.

Boeing contended that the workers were not exposed to toxic chemicals beyond safe levels. Answer of Def. The Boeing Company at 3. The plaintiffs note, however, that regardless of so-called "safe" levels of exposure, Boeing anticipated that those levels would make *its* workers sick, and, in fact, the workers became sick. Reply Br. of Appellants at 2 n.2.

In addition to injury from exposure to toxic substances, the workers alleged misconduct constituting the tort of outrage by Boeing, including removal of labels on the chemicals and denial of access to Material Safety Data Sheets,[1] harassment of employees who requested protective equipment or availed themselves of medical treatment,[2] alteration of workplace conditions during government safety tests to manipulate test results and disguise the harm of the chemicals, and experimental exposure of workers to toxic chemicals without their informed consent.[3]

---

[1]Washington's Worker and Community Right to Know Act, RCW 49.70, mandates employee access to Material Safety Data Sheets, information developed by the manufacturer with respect to the properties and appropriate precautions for use of toxic chemicals. RCW 49.70.100.

[2]Boeing allegedly threatened workers with termination of employment. One worker stated in her affidavit:

> I was given a medical restriction from working with phenolic material in approximately 1987 by Dr. Mayr while I was working at the Auburn 1702 building. There were approximately 20 of us who were feeling really sick and went down to Boeing Medical and were given medical restrictions. *When we got back to work, our supervisor, Edna Loop, told us that we had to go back to Boeing Medical and have the restrictions lifted or we could all go find ourselves jobs at McDonald's, that we wouldn't be working for Boeing.*

Clerk's Papers at 125 (emphasis ours).

[3]One worker's affidavit reads, in pertinent part:

> In approximately April, 1988, while I was working in the Auburn 1702 Building, I was asked by my lead supervisor if I and another woman who worked with me (named Lisa) would help with a test they were doing. We were working with the phenolic resins. Both Lisa and I agreed to wear plastic tags around our necks on that day. It was not clear to me as to what type of test was being performed. I didn't know that the test was concerning the effects of phenolic resin on human beings and to identify the level of toxic exposure I was experiencing. *On that particular day when I wore the plastic tag around my neck, I was feeling really sick to my stomach. I remember Lisa*

The plaintiffs, fourteen workers, at the Auburn facility, filed a complaint in King County Superior Court in 1991 alleging personal injuries and disabilities resulting from the deliberate and outrageous actions of their employer (Boeing), and the Ferro Company, the manufacturer of the phenolic resin, including Boeing's intentional, knowing, and repeated injurious exposure of workers to known toxic chemicals, including the phenolic resin.[4] The workers also alleged Boeing was liable for the tort of outrage and intentional infliction of emotional distress. Ferro subsequently settled with the plaintiffs and was dismissed.

Boeing removed the case to the United States District Court for the Western District of Washington, asserting federal jurisdiction because the complaint contained allegations under federal discrimination statutes and the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq. Boeing also alleged federal preemption under the Labor-Management Act, 29 U.S.C. §§ 157 et seq. The state law claims were cognizable in federal court under pendent jurisdiction.

Boeing moved for summary judgment. The district court determined the allegations in the plaintiffs' affidavits were "insufficient to create a *prima facie* case of specific intent to injure" under Washington law, and ordered dismissal of the plaintiffs' claims against Boeing. Clerk's Papers at 142. On appeal, the Court of Appeals for the Ninth Circuit heard oral argument on October 6, 1994, and by its Order

---

*ate her lunch, but I couldn't eat anything. Later in the afternoon, Lisa and I became so sick my supervisor had to call an ambulance to come and pick us up and take us to Boeing Medical.* They kept us there for the rest of the day. Now I think I was subjected to an experiment as to the effects of phenolic resins on human beings without my knowledge or consent.

Clerk's Papers at 115 (emphasis ours). Boeing did not submit information below to rebut this testimony.

[4]Boeing points out that the workers all received benefits under Title 51 RCW. Br. of Resp't at 11. This fact does not alter our analysis here. RCW 51.24.020 specifically contemplates a "cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title."

of February 6, 1995, certified the two questions of law to this court.

## ANALYSIS

### A. Deliberate Intention To Injure Under RCW 51.24.020

Washington's IIA was the product of a grand compromise in 1911. Injured workers were given a swift, no-fault compensation system for injuries on the job. Employers were given immunity from civil suits by workers.[5] *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 590-91, 158 P. 256 (1916).

At the same time, however, employers who deliberately injured their employees would not enjoy the immunity from suits.[6] This policy has sound roots. Employees' remedies for deliberate injury by employers should not be limited by the IIA. Employers who engage in such egregious conduct should not burden and compromise the industrial insurance risk pool. RCW 51.16.035 (rating system designed to stimulate and encourage accident prevention).

This court has been observant from the outset of the legislative policy mandating employer immunity in cases

---

[5]RCW 51.04.010 reads, in part:

The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

[6]RCW 51.24.020 was first enacted in 1911 and now reads:

If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

There has been no meaningful change in the "deliberate intention" language of the statute from 1911 to this day.

where an employer's conduct does not rise to the level of a deliberate intent to injure. Thus, our cases have narrowly interpreted RCW 51.24.020. We first interpreted the meaning of "deliberate intention" in *Delthony v. Standard Furniture Co.*, 119 Wash. 298, 205 P. 379 (1922). In *Delthony*, an exploding boiler injured the plaintiff. He received compensation under the IIA, but then sued the employer on the ground that the employer deliberately intended to injure him by allowing a dangerous condition to exist. We held there was no evidence to sustain a claim of deliberate intention to injure, and that mere negligence was not enough under RCW 51.24.020. *Delthony*, 119 Wash. at 299-300. We adopted the language of an Oregon case defining a similarly worded statute:

> We think by the words "deliberate intention to produce the injury" that the lawmakers meant to imply that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross.

*Delthony*, 119 Wash. at 300 (citing *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 155 P. 703 (1916)).

Washington courts have consistently interpreted the *Delthony* language to require a specific intent to injure. *Nielson v. Wolfkill Corp.*, 47 Wn. App. 352, 355, 734 P.2d 961, *review denied*, 109 Wn.2d 1008 (1987). Neither gross negligence nor failure to observe safety procedures and laws governing safety constitutes a specific intent to injure. *Biggs v. Donovan-Corkery Logging Co.*, 185 Wash. 284, 54 P.2d 235 (1936); *Peterick v. State*, 22 Wn. App. 163, 189, 589 P.2d 250 (1977), *overruled on other grounds by Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985). Nor is an act that has a substantial certainty of producing injury sufficient to show deliberate intention. *Higley v. Weyerhaeuser Co.*, 13 Wn. App. 269, 271-72, 534 P.2d 596, *review denied*, 85 Wn.2d 1013 (1975). In *Higley*, a saw operator was injured when a piece of a saw's rotating cutterhead broke loose, breaking through a

Plexiglass shield and driving a piece of the shield into Higley's right eye. Higley sued, alleging negligence so gross as to constitute an intentional act. He submitted affidavits attesting to the frequency of breaking and flying cutterheads and the inadequacy of the Plexiglass shielding. The Court of Appeals, citing *Winterroth v. Meats, Inc.*, 10 Wn. App. 7, 516 P.2d 522 (1973), held that Higley's failure to show the employer's specific intent to injure him was fatal to his claim. *Higley*, 13 Wn. App. at 271.

In *Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 547 P.2d 856 (1976), a worker injured his hand in a press. Supervisors had knowingly allowed the disabling of a safety device that required both hands to be free of the press during operation. The plaintiff urged that the defendant's behavior amounted to a deliberate intention to injure him. The court disagreed, holding that "the required intention relates to the injury, not the act causing the injury." *Foster*, 86 Wn.2d at 584. The plaintiff had not submitted sufficient facts to make a prima facie showing of the employer's intent to injure him.

Our courts have found deliberate intention to exist under RCW 51.24.020 in only one case where the issue was contested. *Perry v. Beverage*, 121 Wash. 652, 209 P. 1102 (1922), 214 P. 146 (1923). In *Perry*, the defendant Beverage, the employer's supervisor, struck Perry in the face with a ceramic water pitcher during an altercation. Beverage testified he "struck him with all my might. I don't know just how hard I did strike him." *Perry*, 121 Wash. at 659. The court concluded "the jury had a right to find that there was a deliberate intention on the part of Beverage to do injury." *Perry*, 121 Wash. at 659. In another case involving physical assault, *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 856 P.2d 410 (1993), where one worker driving a forklift purposely crushed another worker between two drums, the presence of deliberate intent was not in dispute on appeal. *Mason*, 71 Wn. App. at 9.

In summary, our courts have found "deliberate inten-

tion" only when there has been a physical assault by one worker against another. Our courts have effectively read the statutory exception to the IIA's exclusive remedy policy nearly out of existence.

The plaintiffs do not propose an expansive or new interpretation of RCW 51.24.020 in response to the Ninth Circuit's query. They believe existing case law permits them to state a cause of action. Boeing, on the other hand, proposes that this court adopt the following statement of the law in response to the certification:

> Evidence that an employer has deliberately engaged in conduct that results in occupational injuries or disease within its workforce is *not* evidence of a specific intent to injure members of that workforce for purposes of RCW 51.24.020 so long as that conduct was *reasonably calculated to advance an essential business purpose.*

> Conversely, when an employer deliberately engages in conduct that is not reasonably calculated to advance an essential business purpose, such conduct *may* constitute evidence of specific intent to injure for purposes of RCW 51.24.020 if the surrounding facts and circumstances indicate that the employer's specific purpose was to bring about an employee's injury.

Br. of Resp't at 18. We decline to adopt Boeing's formulation for RCW 51.24.020 and believe the plaintiffs are incorrect in assuming that the prior case law under RCW 51.24.020 would afford them a cause of action. A clearer articulation of the principle set forth in RCW 51.24.020 is necessary however. In the past, we have said what actions do *not* constitute "deliberate intention." Now we undertake to say what actions *do* constitute "deliberate intention."

Under all court interpretations to date, RCW 51.24.020 has provided an exception only for a case of assault and battery by the employer or its agents on the employee. If physical assault were the perimeter of the exception the Legislature intended, however, it could have said so directly rather than using the words "deliberate intention

. . . to produce such injury." The statutory words must, therefore, mean something more than assault and battery. The facts in the case at bar serve to illuminate the meaning of the statute.

The central distinguishing fact in this case from all the other Washington cases that have discussed the meaning of "deliberate intention" in RCW 51.24.020 is that Boeing here knew in advance its workers would become ill from the phenol-formaldehyde fumes, yet put the new resin into production.[7] After beginning to use the resin, Boeing then observed its workers becoming ill from the exposure. In all the other Washington cases, while the employer may have been aware that it was exposing workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. There was no accident here. The present case is the first case to reach this court in which the acts alleged go beyond gross negligence of the employer, and involve willful disregard of actual knowledge by the employer of continuing injuries to employees.

The judicial and legislative experience with similar facts in other states furnishes direction on an appropriate definition of RCW 51.24.020. In *Beauchamp v. Dow Chem. Co.*, 427 Mich. 1, 4-5, 398 N.W.2d 882, 883 (1986), for instance, a Dow Chemical research chemist sued Dow Chemical, claiming injury from exposure to Agent Orange. He alleged in his complaint that "Dow intentionally misrepresented and fraudulently concealed the potential danger [from exposure to Agent Orange], that Dow intentionally assaulted Ronald Beauchamp, [and] that Dow intentionally inflicted emotional distress." *Beauchamp*, 427 Mich. at 4-5. The Michigan Supreme Court concluded that intentional torts are not precluded by the exclusivity provision of the Michigan Workers' Disability Compensation

---

[7] In answering the questions of the ninth circuit, we employ the traditional analysis that the facts and inferences from the facts on summary judgment must be viewed in a light most favorable to the nonmoving party. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 177, 876 P.2d 435 (1994).

Act, and adopted the "substantial certainty" test as a definition for intentional torts:

> The "substantial certainty" line of cases defines intentional tort more broadly. An intentional tort "is not . . . limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."[8] It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs. If the injury is substantially certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well.

*Beauchamp*, 427 Mich at 21-22 (footnote omitted).[9]

The North Carolina Supreme Court in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), adopted the substantial certainty test as well. Courts in West Virginia,[10] Ohio,[11] South Dakota,[12] and Louisiana[13] have adopted this expansive interpretation of deliberate intent to

---

[8]Citing *Bazley v. Tortorich*, 397 So. 2d 475, 482 (La. 1981).

[9]The Michigan State Legislature modified the holding in *Beauchamp*. In 1987, the Legislature enacted MICH. STAT. ANN. § 17.237(131) (Callaghan 1988), which reads in relevant part:

> The right to recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is *injured as a result of a deliberate act of the employer and the employer specifically intended an injury.* An employer shall be *deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court.

(Emphasis ours).

[10]*Mandolidis v. Elkins Indus., Inc.*, 161 W. Va. 695, 246 S.E.2d 907 (1978).

[11]*Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St. 2d 608, 433 N.E.2d 572 (1982).

[12]*VerBouwens v. Hamm Wood Prods.*, 334 N.W.2d 874 (S.D. 1983).

[13]*Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981).

injure.[14] Our Court of Appeals rejected the substantial certainty test in *Higley v. Weyerhaeuser Co.*, 13 Wn. App. 269, 271-72, 534 P.2d 596 (1975).

Oregon has adopted a view of deliberate intent to injure that focuses on the question of whether the employer had an opportunity consciously to weigh the consequences of its act and knew that someone, not necessarily the plaintiff specifically, would be injured. *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 775 P.2d 891 (1989) (despite repeated complaints from workers about exposure to toxic paints, employer refused to supply respirators); *Gulden v. Crown Zellerbach Corp.*, 890 F.2d 195 (9th Cir. 1989) (workers ordered to scrub floors awash in PCBs at concentrations over 500 times the safe limit on their hands and knees over five-day period).

We decline to adopt the "substantial certainty" test of Michigan, South Dakota, Louisiana, and North Carolina, or the Oregon "conscious weighing" test. We are mindful of the narrow interpretation Washington courts have historically given to RCW 51.24.020, and of the appropriate deference four generations of Washington judges have shown to the legislative intent embodied in RCW 51.04.010.

■ We hold the phrase "deliberate intention" in RCW 51.24.020 means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. We conclude, then, in answer to the certified question, that the evidence the Plaintiffs produced in response to Boeing's motion for summary judgment was sufficient, under Washington law, to justify a trier of fact

---

[14]The legislatures of Ohio and West Virginia reacted to the judicial establishment of the "substantial certainty" test by enacting legislation that more narrowly defined and limited the scope of the exceptions to the exclusivity provisions of their workers' compensation statutes: *See* W. Va. Code § 23-4-2 (Supp. 1994); Ohio Rev. Code Ann. § 4121.80 (Anderson 1991). The Ohio statute continues a curiously circular definition of intentional tort: " 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur . . . . 'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death." Ohio Rev. Code Ann. § 4121.80(G)(1) (Anderson 1991).

in finding that there was a deliberate intention on the part of Boeing to injure the Plaintiffs.

## B. Tort of Outrage

The district court dismissed the plaintiffs' tort of outrage cause of action for two reasons. First, the court discounted the plaintiffs' affidavits as containing "conclusory allegations . . . in conflict with [plaintiffs'] deposition testimony," and concluded that the deposition evidence standing on its own did not support the characterization of Boeing's conduct as outrageous. Clerk's Papers at 178. Second, the court held that the outrage claims were barred by the exclusive remedy provision of the IIA.

Pursuant to the wording of the certification from the Ninth Circuit and to our rule for reviewing summary judgments, we must examine the evidence the plaintiffs produced in their response to the motion for summary judgment, and decide whether that evidence would justify a finding of "outrageous conduct" under Washington law, and would avoid the exclusive remedy provision of the IIA. Thus, there are two questions: (1) does the evidence presented state a claim under the tort of outrage; and (2) is that claim barred by the IIA in this case? We hold that the evidence was sufficient to get to the jury, but that the claim in this case, standing alone, would be barred by the IIA. Since the outrage claim arises from the same facts that establish the RCW 51.24.020 claim, however, it is not barred in this case.

■ 1. Elements of the Tort of Outrage. This court adopted the Restatement (Second) of Torts § 46(1), (2), and (2)(a) (1965) in *Grimsby v. Samson*, 85 Wn.2d 52, 60, 530 P.2d 291, 77 A.L.R.3d 436 (1975). Section 46(1) reads:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

We said in *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989):

The basic elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987); Restatement (Second) of Torts § 46 (1965). The conduct in question must be "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975). The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Phillips v. Hardwick*, 29 Wn. App. 382, 387, 628 P.2d 506 (1981).

■ In making the initial determination as to whether the conduct complained of was sufficiently extreme to result in liability, a court must consider the following factors:

(a) the position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact; (c) whether defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and, (e) the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it.

*Phillips v. Hardwick*, 29 Wn. App. 382, 388, 628 P.2d 506 (1981).

The plaintiffs allege a variety of work-related medical symptoms, oppressive behavior by Boeing supervisors, human experimentation, prevention of workers from transferring even after the workers had been given medical restrictions from working with the phenolic resin, and cleaning and ventilating the workplace immediately before testing by governmental agencies to skew the test

results. Complaint at 5-6. Reviewing our reasoning in *Grimsby* is appropriate here:

> First, the emotional distress must be inflicted *intentionally or recklessly*; mere negligence is not enough. Second, the conduct of the defendant must be *outrageous and extreme*. As indicated by comment *d*, it is not enough that a "defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Liability exists "only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" (Italics ours.) Comment *d* further points out that liability in the tort of outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." In this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration.

*Grimsby*, 85 Wn.2d at 59. The plaintiffs stated a claim for outrage.

Our analysis of this issue does not conclude here, however. We must further decide whether the IIA bars the outrage claim.

2. The Tort of Outrage in the Context of the Industrial Insurance Act. Outrage is a dignitary tort.[15] We have held previously that dignitary torts as well as statutory offenses in the nature of dignitary torts arising in the workplace are not, under certain circumstances, barred by the exclusivity provision of the IIA.

For instance, in *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds by Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d

---

[15]Willard H. Pedrick, *Intentional Infliction: Should Section 46 Be Revised?*, 13 Pepp. L. Rev. 1, 12 (1985) (arguing that plaintiff should not have to prove existence of severe emotional distress to obtain damages under Restatement (Second) of Torts § 46).

1099 (1989), we considered two consolidated cases in which the question was whether the exclusive remedy provision of the IIA bars employee actions against their employers for disability discrimination under RCW 49.60. In both cases, the employer had failed to accommodate disabilities of the plaintiff employees. The employers argued that the IIA abolished judicial jurisdiction over all civil actions for personal injuries, and that the discrimination claims were therefore barred. We held, however, that "employment discrimination actions do not come within this 'immunized area of tort law.'" *Reese*, 107 Wn.2d at 571. We said:

> Appellants claim to have suffered two separate injuries—a workplace physical injury and a subsequent injury arising from the employers' alleged handicap discrimination. Because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (an IIA claim is indifferent to employer fault, a discrimination claim requires such fault), the two injuries cannot be "the same injury." Since the Legislature intended the IIA and the Law Against Discrimination to address the two separate injuries alleged by the appellants, no conflict exists between the two statutes in question.

*Reese*, 107 Wn.2d at 574.[16] In a similar vein, we held in *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986), that the IIA did not bar a claim of emotional distress arising from wrongful termination of employment in violation of public policy because the plaintiff's emotional distress occurred after termination and not in the course of employment. *Cagle*, 106 Wn.2d at 921.[17]

In *Wolf v. Scott Wetzel Servs., Inc.*, 113 Wn.2d 665, 782 P.2d 203 (1989), we held that the IIA bars a civil action for wrongful delay or termination of benefits. We noted, however, that such an action might lie if the wrongful

---

[16]The noted treatise writer, Professor Arthur Larson, referred to *Reese* as "the correct approach." 2A Arthur Larson, *Workmen's Compensation Law* § 68.34(e), at 13-261 (1993).

[17]*See also Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 78, 821 P.2d 18 (1991).

delay or termination was so egregious as to constitute the tort of outrage: "This is because outrageous conduct in the administration of a workers' compensation claim is too tenuous in its relationship to the underlying workplace injury." *Wolf*, 113 Wn.2d at 677. This is another way of saying what we said in *Reese*: an injury that is of a different nature, arises at a different time, and stems from different causes than a workplace injury is not barred by the IIA, even though it may result from actions by an employer that injure an employee. *Reese*, 107 Wn.2d at 574.

Most recently, in *Goodman v. Boeing Co.*, 127 Wn.2d 401, 899 P.2d 1265 (1995), we held that the IIA does not bar a civil action for a *separate* physical injury flowing from a discriminatory response to an IIA-compensable injury. Goodman suffered injury to her hands from the repetitive stress of three years as a microfilm processor. The jury found that Boeing had failed to accommodate her disability in violation of RCW 49.60, and had negligently inflicted emotional distress on her.

Following the separate-injury analysis in *Reese*, we held that because the jury had found Goodman's injuries stemmed from the employer's discrimination and not from her work in the workplace, the IIA did not bar the civil action: "Here the dignitary injury of discrimination has produced further physical injury; the discrimination acted as an intervening cause to cut off the [reach] of the IIA." *Goodman*, 127 Wn.2d at 405. Likewise, citing *Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 829 P.2d 196 (1992), *rev'd in part on other grounds*, 124 Wn.2d 634, 880 P.2d 29 (1994), we concluded that the IIA also did not bar Goodman's claim for negligent infliction of emotional distress because the verbal harassment that caused the emotional distress was separate from any IIA-compensable injury.[18]

With *Reese*, *Goodman* and *Wolf* in mind, we examine

---

[18]In *Wheeler*, the court held a sexual harassment claim was not barred by the IIA because the mental disability resulting from the harassment was not an

the facts of the present case. Here, the plaintiffs allege that "during the course of their employment and as required by Boeing, [they] were exposed to numerous toxic chemicals." Complaint at 3. They specifically allege that Boeing intentionally altered test conditions in the workplace to disguise potential harm to workers from exposure to toxic substances; intentionally exposed workers to chemicals under conditions likely to cause injury; intimidated and threatened workers with job loss unless medical restrictions respecting exposure to toxic substances were removed; withheld information regarding the toxic effects of the phenol resin, including removing labels from packaging and not making available Material Safety Data Sheets on request; intimidated and harassed workers seeking medical treatment and complaining of sickness; intimidated and harassed workers seeking to use protective equipment; subjected workers to experimental exposures to known toxic substances without informed consent; denied the legitimacy of worker complaints of sickness; and refused to make reasonable accommodations for those sensitive to toxic chemical exposure. Complaint at 5-6. The plaintiffs allege that these "acts of Boeing" intentionally inflicted emotional distress on them. "Such emotional distress," they allege, has been associated with physical symptoms including such conditions diagnosed as panic disorder, depressive disorder, headaches, nausea, sensory irritation, chemical sensitization, Multiple Chemical Sensitivity Syndrome, sleeplessness, blood in the urine, dermatitis and skin rashes, diarrhea, vomiting, gastrointestinal distress, shortness of breath, memory loss, and organic brain syndrome. Complaint at 6.

These allegations of harm do not meet the separate-

injury as defined in the IIA: "a sudden and tangible happening . . . producing an immediate or prompt result." RCW 51.08.100. Likewise, the plaintiff's injury was not an "occupational disease as defined in RCW 51.08.140 because it did not "arise naturally . . . out of employment." It was not, therefore, compensable under the IIA. *Wheeler*, 65 Wn. App. at 566-67. The *Wheeler* court, in citing two Board of Industrial Insurance Appeals cases, also noted that "mental disabilities caused by sexual harassment do not arise naturally out of employment, because the physical proximity of victim and harasser occurs in the workplace only coincidentally." *Wheeler*, 65 Wn. App. at 567.

injury test. Far from being "too tenuous in its relationship to the underlying workplace injury," *Wolf*, 113 Wn.2d at 677, the conduct complained of is integral to the plaintiffs' claims of workplace injuries. The injuries the plaintiffs attribute to intentional infliction of emotional distress are not of a different nature, did not arise at different times, and do not have different causal factors from the injuries that resulted from the plaintiffs' exposure to the toxic substances. Although the allegations set forth some elements of a dignitary injury, the gravamen of the conduct complained of goes directly to what caused the physical and psychological harm to the plaintiffs: exposure in the workplace to toxic substances. Merely characterizing the acts that caused the harm as outrageous does not elude the exclusivity provision. These claims do not, therefore, have a separate existence, given the exclusive remedy provision of the IIA.

█ If the outrage claim were all that were before us, we would hold that it cannot lie. But, because we hold the plaintiffs have stated a claim under RCW 51.24.020, it follows that they may also state a claim for outrage. There is a restriction on the outrage claim, however.

The plaintiffs may not predicate their outrage claim merely upon the *reckless* infliction of emotional distress, as is possible for the tort of outrage. The IIA precludes such a claim. The conduct must be intentional to escape the exclusivity provision of the IIA. We distinguish this case from *Goodman*, where we held that a claim for negligent infliction of emotional distress was permissible, by noting that the plaintiff there survived the *Reese* separate-injury test: Goodman's emotional damages stemmed from her employer's discriminatory behavior, and constituted a separate injury not related to the workplace injuries the IIA is designed to compensate. Here, on the other hand, the emotional distress the plaintiffs allege arose directly and solely from the conduct of the employer in the workplace, conduct that was related intimately and specifically to job conditions, and not

from a separate dignitary injury. Thus, before the plaintiffs may recover for emotional distress, they must establish that the defendant *intentionally* inflicted the emotional distress.

Thus, in response to the Ninth Circuit's certified question, we hold that the evidence the plaintiffs produced in their response to the motion for summary judgment is sufficient to permit the trier of fact to determine whether Boeing's conduct constituted the tort of outrage; that is, the *intentional* infliction of emotional distress. To the extent the plaintiffs allege and can prove only negligent or reckless infliction of emotional distress, the exclusive remedy provision of the Industrial Insurance Act bars such claims.

## CONCLUSION

In response to the questions of the United States Court of Appeals for the Ninth Circuit, we hold the plaintiffs here have demonstrated facts sufficient to justify a jury in finding a deliberate intention by Boeing to injure them. Further, to the extent they allege that such deliberate intention to injure was outrageous conduct, they have stated an additional claim for the tort of outrage that is sufficient to reach the trier of fact.

We do not lightly determine that a trier of fact could find a deliberate intent to injure here. We note that employees should be free of deliberate injury by Washington employers. Further, other employers should not have to share the risk under Washington's Industrial Insurance Act with an employer that has deliberately injured its employees. As we said in *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 753, 696 P.2d 1238 (1985), "The exception [to the exclusive remedy provisions] is intended to deter intentional wrongdoing by employers."

Our formulation here of the deliberate intention to injure exception to exclusivity is narrowly focused to deter just such wrongful workplace behavior. The grand compromise of 1911 established in Washington's Industrial In-

874

surance Act remains intact. Although the court in *Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 590-91, 158 P. 256 (1916), may have been correct in stating that in 1916 everyone "agreed that the blood of the workman was a cost of production," that statement no longer reflects the public policy or the law of Washington.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and PEKELIS, JJ., concur.