159 P.3d 494 (2007)
Julie GARIBAY, individually, as Guardian ad Litem for Rylee Nicole Garibay, a minor, and as Personal Representative of the Estate of Demetrio Robert Garibay; Miquela Garibay; Daniel Garibay; Dalia Garibay Garza; Delia Garibay Flores; Diana Garibay Aguayo; and Delphina Garibay Pruneda, Appellants,
v.
ADVANCED SILICON MATERIALS, INC., and Advanced Silicon Materials LLC, Respondents.
No. 24499-7-III.
Court of Appeals of Washington, Division 3.
June 14, 2007.
*495 Jerald D. Pearson, The Pearson Law Firm, Snoqualmie, WA, for Appellants.
Stephen J. Kennedy, Ater Wynne LLP, Seattle, WA, for Respondents.
SWEENEY, C.J.
¶ 1 Washington's Industrial Insurance Act, Title 51 RCW, gives employees no-fault recovery for injuries on the job. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005). In exchange, employers are granted immunity from lawsuits arising from workplace injuries. Id. The legislature created an exception to employer immunity, however, for injuries intentionally caused by the employer. RCW 51.24.020; Vallandigham, 154 Wash.2d at 27, 109 P.3d 805.
¶ 2 Demetrio Garibay died of injuries suffered from a pipe rupture of toxic gas at his workplace, Advanced Silicon Materials, Inc. The question here on appeal is whether the circumstances of the pipe rupture trigger the RCW 51.24.020 exception to employer immunity. We conclude that it does not. And we affirm the trial court's dismissal of this complaint.

FACTS
¶ 3 Advanced Silicon is a Delaware corporation with principal places of business in Moses Lake (built in 1984) and in Silver Bow, Montana (built in 1998). Its plants produce polycrystalline silicon for use in the semiconductor industry. One of the by-products of the manufacturing process is silane gas, a hazardous chemical.
¶ 4 On October 8, 1998, Mr. Garibay and three other men worked in the silane unit. A system of pipes carried gases from a cooling and settling unit (where solids were removed from the gases) to a distillation area. Late that evening, an elbow joint on a pipe suddenly ruptured, releasing silicon tetrachloride, trichlorosilane, and hydrogen at temperatures over 300 degrees Fahrenheit. These gases quickly engulfed the four workers, who managed to escape within minutes. They suffered chemical burns to their respiratory systems and eyes. Two died of their injuries weeks later, including Mr. Garibay.
¶ 5 The Washington Industrial Safety and Health Division of the Department of Labor and Industries conducted an investigation. Advanced Silicon also conducted an internal investigation. Each investigation determined that Advanced Silicon had violated multiple safety rules and had inadequately implemented a mechanical integrity program. The actual cause of the rupture was thinning of the pipe wall due to erosion and corrosion.
¶ 6 The Garibays filed an amended complaint against Advanced Silicon in January 2002 for personal injuries, wrongful death, and criminal profiteering (chapter 9A.82 RCW). They alleged that Advanced Silicon "deliberately, intentionally and willfully exposed workers to ongoing releases along the piping catwalks, and intentionally refused to implement a mechanical integrity program to address the glaring and documented needs to prevent certain system failure." Clerk's Papers (CP) at 21. Later, the court dismissed the claims for criminal profiteering and wrongful death by Mr. Garibay's mother and siblings.
¶ 7 Advanced Silicon moved for summary dismissal of the remaining claims. The trial court granted the order. The court concluded that there were no genuine issues of material fact on whether Advanced Silicon intended to injure Mr. Garibay within the meaning of RCW 51.24.020.

DISCUSSION
¶ 8 The Garibays contend Advanced Silicon deliberately injured Mr. Garibay and the *496 company should not therefore be afforded the usual immunity from suit provided by Washington's Industrial Insurance Act. Birklid v. Boeing Co., 127 Wash.2d 853, 855, 904 P.2d 278 (1995). They note that deliberate intent to injure means (1) the employer had actual knowledge the injury was certain to occur, and (2) the employer willfully disregarded that knowledge. Id. at 865, 904 P.2d 278. Advanced Silicon responds that the "deliberate intention" exception requires that the Garibays show that the employer had actual knowledge that an injury was certain to occur to a particular plaintiff and willfully disregarded that knowledge. Id.
¶ 9 Washington enacted the Industrial Insurance Act in 1911. It abolished civil actions against employers for on-the-job injuries and guaranteed swift compensation to injured workers regardless of fault. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805; Valencia v. Reardan-Edwall Sch. Dist. No. 1, 125 Wash. App. 348, 350, 104 P.3d 734 (2005). Coverage under the Industrial Insurance Act is broad and excludes every other remedy except those subject to specific exceptions set out in Title 51 RCW. RCW 51.04.010; Schuchman v. Hoehn, 119 Wash.App. 61, 66, 79 P.3d 6 (2003).
¶ 10 One of those exceptions applies when an employer intentionally and deliberately injures an employee:
If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.
RCW 51.24.020. The exception for injuries deliberately intended by the employer is narrowly interpreted however. Vallandigham, 154 Wash.2d at 27, 109 P.3d 805. Negligenceeven gross negligenceis not sufficient to show a deliberate intent to injure. Id. "Even failure to observe safety laws or procedures does not constitute specific intent to injure, nor does an act that had only substantial certainty of producing injury." Id. (citing Birklid, 127 Wash.2d at 860, 904 P.2d 278).
¶ 11 Originally, Washington courts interpreted the exception to apply only when an employer (or agent of the employer) physically assaulted a worker. Birklid, 127 Wash.2d at 861-62, 904 P.2d 278. Birklid reexamined the language of RCW 51.24.020 and held that the legislature must have meant to include employer actions beyond assault and battery. Birklid, 127 Wash.2d at 862-63, 904 P.2d 278. After rejecting tests applied in other jurisdictions, Birklid held that "deliberate intention" under RCW 51.24.020 means (1) the employer had actual knowledge that an injury was certain to occur, and (2) disregarded that knowledge. Birklid, 127 Wash.2d at 865, 904 P.2d 278. The intention, however, must relate to the injury, not to the act causing the injury. Id. at 861, 904 P.2d 278. "Simply exposing employees to unsafe conditions is not enough." Valencia, 125 Wash.App. at 351, 104 P.3d 734.
¶ 12 Our review here is de novo. Id. at 350, 104 P.3d 734. And we consider all facts and reasonable inferences from those facts in the light most favorable to the Garibays. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805. Summary judgment is appropriate only if reasonable persons could reach but one conclusion. Id.; CR 56(c).
¶ 13 We first address whether Advanced Silicon had actual knowledge that an injury was certain to occur to Mr. Garibay (the first Birklid prong). The Garibays contend Advanced Silicon knew that the silane gas was toxic, disregarded mandatory safety standards, knew of ongoing erosion in the plant's pipes, and was unwilling to fund investigation and repair for mechanical integrity. Citing Birklid, they assert Mr. Garibay's death was no accident because Advanced Silicon knew its workers were suffering from ongoing exposure to toxic fumes and knew pipe failure was inevitable.
¶ 14 Birklid is one of very few Washington cases to conclude that the evidence was sufficient to show that the employer knew injury was certain to occur. And it is distinguishable from the facts here. The employees in Birklid were injured by repeated exposure to *497 known toxic chemicals at a Boeing facility that manufactured parts impregnated with phenol-formaldehyde resin. Birklid, 127 Wash.2d at 856, 904 P.2d 278. During preproduction testing at the facility, a Boeing supervisor asked for improved ventilation because workers were suffering from dizziness, burning eyes, and stomach ailments. Id. Management denied the request, apparently because ventilation was not cost effective. Id. When full production began, workers experienced rashes, nausea, headaches, and dizziness, and some passed out. Id. The supervisor reported that these symptoms were caused by exposure to the phenolic material. Id. Management continued to maintain that the workers were safe. Id. at 857, 904 P.2d 278. The court noted that Boeing knew that its workers would become ill from the resin. The employers saw the workers becoming ill after the facility went into full production. The court then concluded that Boeing's acts went beyond gross negligence to actual knowledge that the injuries were certain to occur. Id. at 863, 865, 904 P.2d 278; see also Baker v. Schatz, 80 Wash.App. 775, 912 P.2d 501 (1996) (similar facts to Birklid: intentional exposure of workers to toxic chemicals that caused injuries, and refusal to alter environment with knowledge that injuries were certain to continue).
¶ 15 The Garibays showed that workers were frequently exposed to fumes at the plant. These fumes caused stinging eyes, skin irritation, nausea, and respiratory problems. Some workers complained to management but were told to hold their breath and walk away from the vapors. Advanced Silicon admits to these "fugitive emissions." But it argues that they normally occur in this industry and are not prohibited as long as they stay below threshold limits. CP at 397. But ongoing exposure to the fumes is not relevant to Mr. Garibay's injury. The basis of the Garibays' claim is a sudden, catastrophic eruption from a gas pipe, not Mr. Garibay's exposure to random gas emissions.
¶ 16 Frequent gas emissions could, of course, indicate inadequate pipes. According to evidence presented by the Garibays, Advanced Silicon knew that pipes in the plant were eroding and corroding from silica particles and liquids carried in the gases. Advanced Silicon admittedly did not timely comply with the process safety management standards adopted by federal and state regulators in 1992:
The [Advanced Silicon] representatives knew that the company's non-compliance [with mandatory regulatory safety standards] had extended over many years already. These representatives also should have understood that system failure was certain if they were operating a chemical plant at high pressures and high temperatures, in the absence of mandatory mechanical integrity work to monitor erosion, or corrosion, of process piping.
CP at 328. Proper implementation of a mechanical integrity program to test every pipe in the plant might have shown erosion of this pipe (although one internal report noted it was difficult to x-ray the site of the rupture due to a metal support). The Garibays contend Advanced Silicon was unwilling to fund safety programs and upkeep of the Moses Lake plant because it was building a state-of-the-art plant in Montana. An Advanced Silicon internal e-mail reveals that inspections of the pipes in Moses Lake were curtailed to bring costs down. And the silane unit in particular was excluded from inspections because management assumed its pipes carried only gas, not particulates or liquids that would erode or corrode the pipes.
¶ 17 Viewed in the light most favorable to the Garibays, this evidence shows that Advanced Silicon knew or should have known that rupture of this pipe was imminent or even certain to occur eventually. It does not, however, support a reasonable inference that Advanced Silicon had actual knowledge that the injury to Mr. Garibay was certain to occur. See Birklid, 127 Wash.2d at 861, 904 P.2d 278 (the employer must have intended the injury, not the act causing the injury). Exposure of Mr. Garibay to this unsafe condition was not enough to meet the first Birklid prong. Id. at 863, 904 P.2d 278; Valencia, 125 Wash.App. at 351, 104 P.3d 734. Advanced Silicon's breach of duties imposed by law and its failure to remedy known defects may constitute negligence or even gross negligence, but these actions do not represent *498 actual knowledge that Mr. Garibay's fatal injuries were certain to occur. Vallandigham, 154 Wash.2d at 35, 109 P.3d 805.
¶ 18 The Garibays then fail to raise a genuine issue of material fact regarding Advanced Silicon's knowledge that Mr. Garibay would be injured. Even if Advanced Silicon was aware that it was exposing its workers to unsafe conditions, the event that killed Mr. Garibay was a sudden, catastrophic accident. See Valencia, 125 Wash.App. at 352-53, 104 P.3d 734 (evidence may show possibility of injury, but does not show knowledge that injury would occur to the next person who used the defective device). And even if that accident could have been predicted with substantial certainty, no reasonable juror could find that Advanced Silicon had actual knowledge it was certain to occur. Vallandigham, 154 Wash.2d at 35, 109 P.3d 805. Because the Garibays do not establish the requisite knowledge prong, they also fail to satisfy the second Birklid prong: willful disregard of such knowledge. Vallandigham, 154 Wash.2d at 34, 109 P.3d 805. Advanced Silicon was entitled to judgment as a matter of law. Id. at 35, 109 P.3d 805.
¶ 19 We affirm the summary dismissal of the complaint.
WE CONCUR: BROWN and KULIK, JJ.