IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRANDON TAPPERT, | ) | No. 68912-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| NUPRECON GP, INC., a corporation | ) | |
| licensed to do business in State of | ) | UNPUBLISHED OPINION |
| Washington; and NUPRECON, LP d/b/a | ) | |
| Nuprecon Acquisition LP, a partnership | ) | |
| licensed to do business in the State of | ) | |
| Washington, | ) | |
| | ) | |
| Respondents. | ) | FILED: October 7, 2013 |

SCHINDLER, J. — The Industrial Insurance Act, Title 51 RCW (IIA), is the exclusive

remedy for workplace injuries. But a limited exception allows an employee to sue if the

employer willfully disregards actual knowledge that the injury is certain to occur.

Because Brandon Tappert failed to establish that his employer willfully disregarded

actual knowledge that the injury was certain to occur, we affirm summary judgment

dismissal of his lawsuit.

FACTS

The material facts are not in dispute. Brandon Tappert worked as an asbestos

abatement worker for Nuprecon GP Inc. and Nuprecon LP, d/b/a Nuprecon Acquisition

LP (Nuprecon).

In July 2007, a Nuprecon crew was working on an asbestos abatement project at John Rogers Elementary School. The project involved "chip[ping] up and dispos[ing] of asbestos floor tiles." Robert Lindsey was the supervisor of the project and the work crew.

To prevent the spread of asbestos particles, the abatement workers sealed off the rooms by using plastic sheeting to cover the windows, doors, and walls. The workers also wore jumpsuits with hoods, goggles, and masks with filters to prevent the inhalation of asbestos dust particles.

On July 5, Lindsey and Tappert were working in one of the classrooms removing floor tiles. Lindsey used a Blastrac machine to chip and strip off the floor tiles. Tappert used a shovel to pick up the tiles and deposit the debris into the 55-gallon drum in the room.

The Blastrac machine is powered by a propane engine. A large warning label on the side of the machine states: "! WARNING Carbon monoxide can cause severe nausea, fainting or death. Do not use indoors without adequate ventilation." The Blastrac is equipped with a "scrubber" device that removes carbon monoxide.

Lindsey wore a carbon monoxide monitor. The alarm on the monitor was set to go off if the level of carbon monoxide reached the hazardous level of 70 parts per million (p.p.m.). Lindsey said that just as he was finishing chipping the floor tiles in the classroom, the carbon monoxide alarm went off and he turned off the Blastrac machine. Lindsey said he does not recall telling Tappert that the alarm went off. But before leaving to go work in another classroom, Lindsey told Tappert "to ventilate the room." When Lindsey returned approximately 20 minutes later and found Tappert unconscious

2

on the floor, he called 911.

Shortly after the accident, a Department of Labor and Industries (DLI) inspector measured the carbon monoxide level in the classroom. The carbon monoxide level was significantly higher than the hazardous level of 70 p.p.m.

DLI cited Nuprecon for a "[s]erious" violation of the Washington Administrative Code (WAC) for failure to adequately address carbon monoxide through its prevention program. The citation states, in pertinent part:

> **Violation 1, Item 1a, .......... Type of Violation: Serious**
> Washington Administrative Code (WAC) violated: 296-155-110(3)(e)
>
> The employers [sic] written accident prevention program did not adequately address the following:
> Identification of hazardous gases used on-the-job and instruction about the emergency action to take after accidental exposure to them, in that it did not instruct employees to evacuate areas where elevated levels of carbon monoxide were detected.[1]

Tappert filed a complaint against Nuprecon for the injuries he suffered from exposure to carbon monoxide. Tappert alleged that Nuprecon had actual knowledge of certain injury and willfully disregarded that knowledge.

Nuprecon filed a motion for summary judgment dismissal. Nuprecon argued that because it did not willfully disregard actual knowledge that the injury to Tappert was certain to occur, Tappert's lawsuit was barred by the Industrial Insurance Act, Title 51 RCW (IIA).

In support of summary judgment, Nuprecon submitted the declaration of Nuprecon Field Safety Officer Avery Brown. Brown testified that Nuprecon had policies and procedures to control the carbon monoxide exhaust emissions from propane-

---

[1] (Emphasis and alteration in original.) DLI also cited Nuprecon for a serious violation of WAC 296-155-160(2) for failure to "use feasible exposure controls to reduce employee exposure to carbon monoxide," but that violation was later vacated.

powered equipment. Brown stated, in pertinent part:

> At all times relevant to the Complaint, Nuprecon had a policy and procedure to safely control exhaust emissions from gas or propane powered equipment. Specifically, Procedure 16.1.17, attached as Exhibit 1, sets forth definitions and procedures to safely control carbon monoxide. This procedure provided definitions for carbon monoxide and specific procedures on how to set up the equipment, set up the job, regulate emission levels and what actions to take in the event an alarm was sounded.

Brown also stated that Nuprecon conducted a daily safety check that included checking carbon monoxide levels at the beginning of each day.

Brown testified that Nuprecon rented the Blastrac machine and the machine was equipped with scrubbers to remove the carbon monoxide. Brown concluded the scrubbers must have malfunctioned.

> [B]ased on the events that occurred, it is clear that the scrubber must have malfunctioned as it is undisputed that Brandon was overcome by CO (Carbon Monoxide) which had been in the room where he was working. None of us were aware that the scrubber on the Blastrac was malfunctioning on July 5, 2007.

Nuprecon also submitted the "16.1.17 Nuprecon Exhaust Emission Control Procedures." The procedures require equipment operators to receive training on the dangers of carbon monoxide, the use of carbon monoxide monitors, and how to set up a work space to ensure optimal airflow. The procedures state that "[p]ropane or diesel powered equipment must be fitted with exhaust scrubbers." The procedures also state that windows and doors should be open to assure ventilation and to use exhaust fans when necessary for air movement. In the event a monitor alarm goes off, the procedures direct the equipment operator to "cease operations" and "move to a fresh-air environment until the monitor resets." If the "monitor continues to alarm," the procedures direct the equipment operator to contact the supervisor. The project

4

supervisor is directed to end operations and contact the Nuprecon Safety Department.

In opposition, Tappert submitted the declaration of his supervisor Robert Lindsey. Lindsey testified that the classroom was sealed with plastic sheeting to prevent airborne asbestos from leaving the room. Lindsey stated that he "was operating a blastrac floor stripper that chipped the floor tiles [and] [t]he blastrac was propane powered," but "because we were working in a sealed, abatement environment, we could not vent the fumes outside."

Lindsey testified he was aware of the warning on the side of the machine. Lindsey said that when the carbon monoxide alarm went off, he turned off the machine. Lindsey did not recall telling Tappert that the alarm had gone off, "I just told Brandon to ventilate the room. Then I left him in the room to finish cleaning up." Lindsey said that he "should not have left Brandon to ventilate the room by himself. I should have had more than one person ventilate the room and gotten everyone out until the carbon monoxide fumes had dissipated."

Tappert also submitted excerpts from the deposition testimony of Nuprecon Vice President Peter Wold. Wold testified that when performing abatement work, Nuprecon creates a negative pressure plastic enclosure in the work area to contain the asbestos particles.

The court granted the motion for summary judgment dismissal. The court ruled, in pertinent part:

> I think the controlling case is Birklid, the Boeing case,[2] which held that deliberate intention under the statute means that the employer had actual knowledge that an injury was certain to occur and, secondly, disregarded that knowledge. . . .
> . . . I don't believe that the plaintiff can show here to the finder of

---

[2] Birklid v. The Boeing Co., 127 Wn.2d 853, 904 P.2d 278 (1995).

fact that there was a deliberate intent to injure. And that is that the employer, through its supervisor, Mr. Lindsey, would not have had actual knowledge that an injury was certain to occur. [I]t dovetails with the second component, which is disregard. [T]he same factual conduct of Mr. Lindsey I believe undermine's [sic] proof on both of those elements.

To the degree that Mr. Lindsey instructed Mr. Tappert to ventilate, it's clear that his belief was ventilation would have countered the danger posed by the carbon monoxide levels in the asbestos abatement setting. And, secondly, even if he had actual knowledge, because of those levels, he didn't regard -- disregard that danger. He took action, regardless of how ineffective it was, by instructing the employee to ventilate.

Should he have confirmed ventilation? Should he have taken Mr. Tappert out of the room? Should he have advised Mr. Tappert of the high carbon monoxide levels? Absolutely. He should have done any or all of those actions. But the failure to do that, in this court's opinion, would at most have constituted negligence or gross negligence, but not deliberate intent to injure Mr. Tappert.

In the "Order Granting Summary Judgment," the court ruled that because

Tappert failed to establish Lindsey had the specific intent to injure him, under RCW

51.04.010, it did not have jurisdiction. The order states, in pertinent part:

1. There are no material facts in dispute.
2. Taken in light most favorable to Plaintiff, Plaintiff failed to establish that Defendants had a specific intent to injure him on July 5, 2007.
3. Because there was no specific intent to injure Plaintiff, the Superior Court lacks jurisdiction pursuant to RCW 51.04.010.
Now, It is Hereby Ordered that Defendants' Motion for Summary Judgment is granted.
The Court incorporates by reference its oral ruling in this matter.

## ANALYSIS

Tappert contends the court erred in granting summary judgment and dismissing

his lawsuit as barred by the IIA. Tappert contends the evidence shows Nuprecon knew

the injury was certain to occur and willfully disregarded that knowledge.

We review summary judgment de novo. Hartley v. State, 103 Wn.2d 768, 774,

698 P.2d 77 (1985). Summary judgment is appropriate when there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009). If the defendant shows an absence of evidence to establish the plaintiff's case, the burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Summary judgment is appropriate if reasonable minds could reach but one conclusion. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

The IIA is the exclusive remedy for workplace injuries. RCW 51.04.010 provides:

> The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

The statutory bar is subject to a limited exception that allows an employee to sue if the employer deliberately injures the employee. RCW 51.24.020 provides:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of

7

action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

The Washington Supreme Court has narrowly interpreted this statutory exception. The failure to follow safety regulations, negligence, or even gross negligence does not constitute actual knowledge. Birklid v. The Boeing Co., 127 Wn.2d 853, 860, 904 P.2d 278 (1995). In Birklid, the Washington Supreme Court held that the phrase "deliberate intention" means that "the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." Birklid, 127 Wn.2d at 865.

In Vallandigham, the Court reiterated that even if the employer knew that an injury "would probably occur, . . . in order for an employer to act with deliberate intent, injury must be certain; substantial certainty is not enough." Vallandigham, 154 Wn.2d at 33, 18.[3] "Disregard of a risk of injury is not sufficient to meet the first Birklid prong; certainty of actual harm must be known and ignored." Vallandigham, 154 Wn.2d at 28.[4] The Court also rejected using a reasonableness or negligence standard to determine whether an employer has acted with willful disregard. Vallandigham, 154 Wn.2d at 35. A finding of willful disregard cannot be "based upon the simple fact that an employer's remedial efforts were ineffective." Vallandigham, 154 Wn.2d at 35.

> We cannot overemphasize that the Birklid court considered and rejected both a "substantial certainty" and a "conscious weighing" test. Birklid, 127 Wn.2d at 865. . . . Instead, the Birklid court, mindful of Washington's historically narrow interpretation of RCW 51.24.020, made it abundantly clear that foreseeability, or even substantial certainty, is not enough to establish deliberate intent to injure an employee. Birklid, 127 Wn.2d at 865. Even an admission that [the employer] recognized that injury would probably occur is not enough to establish knowledge of

---

[3] (Emphasis in original.)
[4] (Emphasis in original.)

certain injury. Only actual knowledge that injury is certain to occur will meet this first prong of the Birklid test.

Vallandigham, 154 Wn.2d at 33.[5]

Tappert relies on Birklid to argue the evidence establishes a prima facie showing that Nuprecon had actual knowledge of certain injury and willfully disregarded that knowledge. Birklid does not support Tappert's argument.

In Birklid, the record established that the employer received ongoing complaints and knew that its workers became ill from the fumes created from a particular manufacturing process involving resin. Birklid, 127 Wn.2d at 856. The employer also knew that changing the venting system would alleviate the problem. Birklid, 127 Wn.2d at 856. Nonetheless, the employer chose not to change the venting system, and allowed the employees to continue to be exposed to the fumes. Birklid, 127 Wn.2d at 856. The Washington Supreme Court concluded the employee presented evidence to establish a prima facie showing of deliberate intent. Birklid, 127 Wn.2d at 865-66. In distinguishing the facts in Birklid from previous cases, the Court pointed to the actual knowledge of the employer about the continuing injuries to the employees. Birklid, 127 Wn.2d at 863.

> In all the other Washington cases, while the employer may have been aware that it was exposing workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. There was no accident here. The present case is the first case to reach this court in which the acts alleged go beyond gross negligence of the employer, and involve willful disregard of actual knowledge by the employer of continuing injuries to employees.

Birklid, 127 Wn.2d at 863.

Tappert contends that as in Birklid, Nuprecon had actual knowledge of certain

_____

[5] (Emphasis in original.)

9

injury that it willfully disregarded. Tappert asserts the uncontroverted evidence establishes Lindsey knew the carbon monoxide from the Blastrac machine had reached hazardous levels, did not warn Tappert, but instead told him to stay in the room to finish cleaning up.

Even in the light most favorable to Tappert, the evidence does not show that Lindsey had actual knowledge of certain injury and willfully disregarded that knowledge. The undisputed testimony establishes that after the carbon monoxide alarm went off, Lindsey immediately instructed Tappert to "ventilate the room." Without question, Tappert had an obligation to follow Lindsey's instructions and there is no dispute that Tappert could have removed the plastic sheeting over the windows to ventilate the room. While Lindsey may have been negligent or even acted with gross negligence, the evidence does not show that Lindsey had actual knowledge of certain injury to Tappert from carbon monoxide and willfully disregarded that knowledge. Further, unlike in Birklid, there is no evidence that there were other injuries from carbon monoxide emissions while using the Blastrac machine.

We affirm summary judgment dismissal of the lawsuit against Nuprecon.

_Schindler, J._

WE CONCUR:

_Leach, C.J._                    _Dwyer, J._