[No. 75824-7.   En Banc.]
Argued June 23, 2005.     Decided October 6, 2005.

JILL DOTY, *Respondent*, v. THE TOWN OF SOUTH PRAIRIE, *Petitioner*.

528

*Michael B. Tierney* (of *Michael B. Tierney, P.C.*), for petitioner.

*John W. Schedler* and *Christina L. Smith* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondent.

*Robert M. McKenna, Attorney General*, and *James S. Johnson, Assistant*, on behalf of the Department of Labor and Industries, amicus curiae.

¶1 BRIDGE, J. — Jill Doty was injured while serving as a volunteer fire fighter for the town of South Prairie (Town) and filed a negligence suit against the Town seeking damages. The superior court determined that Washington's Industrial Insurance Act (IIA), Title 51 RCW, precluded Doty's negligence suit and dismissed her claim. The Court of Appeals, finding the IIA's exclusive remedy provision inapplicable to volunteers, reversed. The Town petitioned this court for review, which we granted. We now affirm the Court of Appeals.

I

¶2 In 1999, Jill Doty served as a volunteer fire fighter for the Town. During Doty's time as a volunteer fire fighter, the Town paid volunteer fire fighters a stipend of $6 per call and $10 per drill. In addition, the Town paid premiums on Doty's behalf to the Board for Volunteer Fire Fighters for coverage under the volunteer fire fighters' and reserve officers' relief and pensions act (VFFA), chapter 41.24 RCW.

¶3 On December 25, 1999, Doty was injured while responding to a call in her capacity as a volunteer fire fighter. In attempting to close the fire hose bale, Doty sustained wrist, arm, and hand injuries. Due to these injuries, Doty alleges she has incurred and continues to incur significant medical expenses. Following her injuries, Doty applied for and received some benefits under the VFFA. Additionally, she brought suit against the Town complaining negligence and seeking damages for medical expenses, lost earning capacity, and pain and suffering.

¶4 In response to her negligence suit, the Town moved to dismiss based, in part, on its claim that Doty was subject to the IIA's exclusive remedy provision prohibiting the superior court from exercising jurisdiction over the case. The superior court agreed and dismissed the suit. Doty appealed and the Court of Appeals reversed, holding that the IIA did not cover Doty. *Doty v. Town of South Prairie*, 122 Wn. App. 333, 341, 93 P.3d 956 (2004). Specifically, the

Court of Appeals concluded that the IIA does not address the coverage of volunteer fire fighters, that generally the IIA does not provide coverage for volunteers, and that because Doty did not receive "wages" for her services, she was a volunteer and not an employee under the IIA. *Id.* at 341. As such, the Court of Appeals held that the IIA did not preclude her negligence action against the Town and remanded the case to the superior court. We granted the Town's petition for review. *Doty v. Town of South Prairie,* noted at 153 Wn.2d 1017 (2005).

II

¶5 The IIA was first enacted in 1911 to provide "sure and certain relief for work[ers]" injured in their work "regardless of . . . fault." LAWS OF 1911, ch. 74. While the IIA initially provided relief only to workers injured while performing "extra hazardous work," *id.*, in 1971 the legislature amended the IIA to encompass "all employments . . . within the legislative jurisdiction of the state." LAWS OF 1971, 1st Ex. Sess., ch. 289, §§ 1-2. In return for providing statutorily based, fault-free recovery, the legislature removed claims by workers against their employers from private controversy. *Id.*; *see also* RCW 51.32.010. As such, the IIA provides "[i]njured workers [with] a swift, no-fault compensation system for injuries on the job" and provides "[e]mployers [with] immunity from civil suits by workers." *Birklid v. Boeing Co.,* 127 Wn.2d 853, 859, 904 P.2d 278 (1995). The IIA is broad in scope and contains a mandate of liberal construction "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010.

¶6 Separate and distinct from the IIA, for nearly a century our legislature has endeavored to provide fire fighters with certain medical, disability, death, and pension benefits. *See* LAWS OF 1909, ch. 50 (establishing Fireman's Relief and Pension Fund). In 1935, the legislature enacted

a similar provision extending some death and disability benefits to volunteer fire fighters. *See* Laws of 1935, ch. 121, *repealed by* Laws of 1945, ch. 261, § 27. In 1945, the legislature amended and strengthened the provision of benefits to volunteer fire fighters, enacting the VFFA which provides for mandatory death, sickness, injury, and disability benefits and permissive pension benefits. Laws of 1945, ch. 261, *codified at* ch. 41.24 RCW.

¶7 In the 1970s, the legislature made two relevant amendments to the IIA. First, as noted above, in 1971, the legislature significantly expanded the scope of the IIA to include "all employments . . . within the legislative jurisdiction of the state" thereby extending its coverage beyond enumerated extra hazardous employments. Laws of 1971, 1st Ex. Sess., ch. 289, §§ 1-2, *codified at* RCW 51.12.010. Also in 1971, the legislature recognized a distinction between employments and volunteer positions. In amending the IIA, the legislature required state "[v]olunteers" to be "deemed employees and/or work[ers]" but only *"for all purposes relating to medical aid benefits."* Laws of 1971, ch. 20, § 1 (emphasis added), *codified at* RCW 51.12.035(1). In 1975, the legislature further expanded this provision to permissively include, at the supervising entity's discretion, volunteers of any "unit of local government" or "nonprofit charitable organization," again "for all purposes relating to medical aid benefits" under the IIA. Laws of 1975, 1st Ex. Sess., ch. 79, § 1, *codified at* RCW 51.12.035(2). The legislature excluded from the relevant definition of " 'volunteer' " "fire[fighters] covered by chapter 41.24 RCW." *Id.*

¶8 The IIA contains a mandate of liberal construction, instructing that all doubts should be resolved in favor of coverage for the injured worker. The Town asserts that the Court of Appeals below failed to liberally interpret the IIA in favor of the injured worker when it concluded that the IIA does not cover volunteer fire fighters. Pet. for Review at 8, 11.

¶9 In this context, we have recently stated that:

where reasonable minds can differ over what Title 51 RCW provisions mean, in keeping with the legislation's fundamental purpose, the benefit of the doubt belongs to the injured worker:

[T]he guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.

*Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 811, 16 P.3d 583 (2001) (alteration in original) (quoting *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)). Thus, while we apply and interpret the IIA liberally, the relevant definitions of "employee," "worker," and "employment" define whether an individual is covered by the IIA at all, that is whether an individual is a " 'covered *employee*[ ] injured in [his or her] employment.' " *Id.* (emphasis added) (quoting *Dennis*, 109 Wn.2d at 470). While it cannot be mistaken that the IIA is a remedial statute that should be interpreted in favor of the injured worker, as with all issues of statutory interpretation, our primary goal is to carry out legislative intent and give meaningful effect to the language our legislature enacted. *See, e.g., id.* at 807. When the statutory language is unambiguous, we derive this intent from the language used in the statute and related statutes, giving effect to every provision. *See Schrom v. Bd. for Volunteer Fire Fighters*, 153 Wn.2d 19, 25, 100 P.3d 814 (2004); *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10-12, 43 P.3d 4 (2002).

¶10 Turning to the issues presented here, Doty contends that the IIA, generally, does not apply to volunteers, that the IIA does not specifically address volunteer fire fighters, and that, in this case, Doty was a volunteer and not an employee and/or worker. Thus she argues she is not covered by the IIA nor subject to its exclusive remedy provision. The Town responds that the IIA covers all employments unless expressly excluded, that this broad coverage extends to volunteer fire fighters, and that since volunteer fire fighters

are public officers, receive wages, and are under the direction and control of their supervisors, they are employees under the IIA. As such, the Town asserts they are subject to the IIA's exclusive remedy provision.[1]

## III

## Volunteers under the IIA

¶11 We first consider the scope of coverage the IIA provides to certain volunteers and whether "employers" of such volunteers are entitled to statutory immunity under the IIA. The Town asserts that a liberal construction of the IIA requires the inclusion of all workers or employees unless expressly excluded and that, giving injured volunteer fire fighters the benefit of the doubt, they should be classified as workers since the IIA does not expressly exclude them.[2] Pet. for Review at 11-12. Doty counters that, generally, "volunteers are not . . . considered to be covered employees with comprehensive coverage under the Act." Answer to Pet. for Review at 10 (citing *In re Wissink*, 118 Wn. App. 870, 877, 81 P.3d 865 (2003)).

■ ¶12 The IIA provides statutory definitions for crucial terms, which are controlling in our analysis. *See Cockle*, 142

---

[1] Additionally, the Department of Labor and Industries (L&I) filed an amicus brief addressing the interplay between the VFFA and the IIA. Br. of Amicus L&I at 18. L&I asks this court to focus our analysis on whether RCW 51.12.050(3) prohibits a civil suit in this case. That subsection provides:

> Whenever and so long as, by state law, city charter, or municipal ordinance, provision is made for employees or peace officers injured in the course of employment, such employees shall not be entitled to the benefits of this title and shall not be included in the payroll of the municipality under this title . . . .

RCW 51.12.050(3). L&I claims that the statutory benefits provided volunteer fire fighters under chapter 41.24 RCW preclude coverage under the IIA. It then asserts that the crucial question facing the court is whether, despite not being entitled to IIA benefits, Doty may still be subject to the IIA exclusive remedy provision. However, like other provisions of the IIA, operation of this subsection requires first that the injured person in question in fact be an employee under the IIA. It does not purport to have any effect or relevancy with respect to volunteers. Thus looking to RCW 51.12.050(3) still begs the question of whether Doty is a volunteer or employee and/or worker under the IIA.

[2] The Town asserted in its motion to dismiss, which the superior court granted, that Title 51 RCW should be "broadly construed to include all workers, including volunteers . . . *unless expressly excluded by statute.*" Clerk's Papers at 197.

Wn.2d at 808. The IIA instructs that " '[e]mployee' shall have the same meaning as 'worker' when the context would so indicate, and shall include all officers of the state, state agencies, counties, municipal corporations, or other public corporations, or political subdivisions." RCW 51.08.185. It then goes on to define " '[w]orker' " as "every person in this state who is engaged in the employment of an employer . . . [and] every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title . . . ." RCW 51.08.180. As we have stated, the IIA provides "[i]njured *workers* [with] a swift, no-fault compensation system" and provides "[e]*mployers* [with] immunity from civil suits by *workers.*" *Birklid,* 127 Wn.2d at 859 (emphasis added). For an injured person to fall within the statute's protection, he or she must in fact be a worker.

■ ¶13 In contrast to employees and/or workers, the IIA recognizes a class of persons who are separate and distinct from employees and/or workers—volunteers. While not addressed in depth in the IIA, one relevant section which provides a limited allowance for medical aid benefits for volunteers instructs that,

> volunteers may be deemed employees and/or workers, as the case may be, for all purposes relating to medical aid benefits under chapter 51.36 RCW at the option of any city, county, town, special district, municipal corporation, or political subdivision of any type, or any private nonprofit charitable organization, when any such unit of local government or any such nonprofit organization has given notice of covering all of its volunteers to the director prior to the occurrence of the injury or contraction of an occupational disease.

> A "volunteer" shall mean a person who performs any assigned or authorized duties for any such unit of local government, or any such organization, except emergency services workers as described by chapter 38.52 RCW, or fire fighters covered by chapter 41.24 RCW, brought about by one's own free choice, receives no wages, and is registered and accepted as a

volunteer by any such unit of local government, or any such organization which has given such notice, for the purpose of engaging in authorized volunteer services: PROVIDED, That such person shall be deemed to be a volunteer although he or she may be granted maintenance and reimbursement for actual expenses necessarily incurred in performing his or her assigned or authorized duties . . . .

RCW 51.12.035(2). The IIA allowance that "volunteers *may be deemed* employees and/or workers" (RCW 51.12.035 (emphasis added)), for purposes relating to medical aid benefits under chapter 51.36 RCW, strongly implicates that outside section .035, volunteers are *not* "employees and/or workers" under the IIA. *Id.*

¶14 The Board of Industrial Insurance Appeals (BIIA) has previously addressed the issue of whether a volunteer is covered under the IIA. *See In re Meyer*, No. 42,576, 1975 WA Wrk. Comp. LEXIS 4 (Wash. Bd. of Indus. Ins. Appeals Oct. 10, 1975). In *Meyer*, the BIIA addressed whether the IIA covered a police informant who was injured while assisting the Seattle Police Department. *Id.* The city of Seattle, pursuant to city ordinance, paid the informant's related medical and hospital expenses, and further the Seattle Police Department provided the informant with cash to cover expenditures related to his informant efforts. *Id.* In spite of the payment of medical expenses and various "monies advanced" to the informant, the BIIA found that the informant was a volunteer and not an employee of the city of Seattle, and as such, the IIA did not cover his injuries. *Id.* Significantly, the BIIA squarely rejected the argument posited by the Town here:

> [O]ne further legal argument is advanced by claimant which we believe is clearly not well taken. This is the argument that all "volunteers" are covered by the Act and that the only "volunteers" who are partially excluded from coverage are those who are volunteers for state agencies who, by virtue of RCW 51.12.035, are entitled only to the medical aid benefits under the Act.
>
> We cannot agree with this argument, because the premise on which it is based, namely, that volunteers or gratuitous work-

ers are the same as employees for mandatory coverage purposes, is wrong. For the reasons we have heretofore discussed, volunteers are not employees, inasmuch as the very basis of the employee-employer relationship is the performance of service in return for some kind of remuneration therefor, whereas volunteers by definition are rendering service for which remuneration is not received or expected to be received.

It was in recognition of the obvious fact that no volunteers are covered by the normal "employment" criterion, that the Legislature in 1971 (Chapter 20, Laws of 1971) decided to pass the special statute, now codified as RCW 51.12.035, providing that volunteers for state agencies only should be "deemed" to be employees or workmen, for the limited purpose of medical aid benefits under the Act. It was necessary that they be "deemed" employees, since otherwise under normal legal principles they do not have employee status.

*Id.* Thus, the BIIA has taken the position that *but for* RCW 51.12.035, volunteers or gratuitous workers are not otherwise covered by the IIA. "While the Board's interpretation of the Act is not binding upon this court, it is entitled to great deference." *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991). Here, the BIIA's interpretation of the IIA, with respect to volunteers and the effect of RCW 51.12.035, is a sound reading that gives effect to the plain language of the section in the context of the IIA.

¶15 Division Three has also addressed the issue of volunteers under the IIA. *In re Wissink*, 118 Wn. App. 870. In *Wissink*, a prison inmate was injured while volunteering as an inmate worker in Stevens County jail. *Id*. at 872. The Department of Labor and Industries (L&I) rejected the county's claim for reimbursement of medical expenses, and the BIIA affirmed that rejection. *Id*. at 872-73. The question on appeal was whether the inmate qualified for IIA medical benefits under RCW 51.12.035(2). *Id*. at 873. The Court of Appeals concluded that the "clear terms" of RCW 51-.12.035(2) provide that "a volunteer entitled to medical aid benefits is a person who (1) performs assigned or authorized duties for the local government or nonprofit organization (2) by his or her own free choice (3) without pay and (4) is

registered as a volunteer." *Wissink*, 118 Wn. App. at 875. Finding that the inmate performed duties for the county jail, by his own free choice, and without pay, the Court of Appeals held that the inmate was a volunteer. *Id*. at 877.

¶16 The *Wissink* case reflects the IIA's codification of a distinction, in Washington, between "employees and/or workers" and "volunteers." *Compare* RCW 51.08.180-.195 *with* RCW 51.12.035, .140, .170. While the parties do not dispute that volunteer fire fighters, as separately covered under the VFFA, are specifically excepted from RCW 51.12.035(2)'s provisio for limited medical benefits for volunteers, the *Wissink* case nevertheless reinforces that, *generally*, volunteers are not provided comprehensive coverage under the IIA. A person who performs duties "by his or her own free choice" and "without pay" is not an employee and/or worker under the IIA and thus coverage does not attach.

¶17 In sum, while the IIA includes within its broad scope "all employments" within the legislative jurisdiction of the state, it does not purport to cover volunteers. RCW 51-.12.010. *Cf.* RCW 51.12.035 (permitting "volunteers" *to be deemed* employees and/or workers for limited medical aid benefits); WAC 296-17-930 (same). The very existence of RCW 51.12.035 presupposes the notion that absent such a provision, volunteers would be entitled to *no* IIA benefits. As the IIA reads, volunteers may be brought under the IIA *only* "for all purposes relating to medical aid benefits under chapter 51.36 RCW." RCW 51.12.035(2). This provision is unambiguous and limited on its face. First, absent this provision, volunteers are not entitled to any IIA benefits. Second, if a volunteer does qualify under RCW 51.12.035, it *only* provides eligibility for medical aid benefits. Coverage is not comprehensive, and immunity from liability does not attach. As such, we hold, based on the plain language of the applicable statutes, that, generally, the IIA does not provide coverage to volunteers, and the "employers" of such volunteers are not entitled to immunity from civil suit.

## Volunteer Fire Fighters as Volunteers or Employees and/or Workers

¶18 The parties additionally dispute whether volunteer fire fighting is nevertheless an employment covered by the IIA. Specifically, they dispute whether the IIA classifies Doty as an employee and/or worker who would fall within the scope of the IIA, or alternatively a volunteer to whom the IIA would not apply. Doty asserts that she meets the definition of " 'volunteer' " found in RCW 51.12.035 and as such cannot be an employee under the IIA. The Town counters that RCW 51.12.035 is limited in scope, and the definition Doty relies on specifically excludes volunteer fire fighters and is thus irrelevant to the issue of whether Doty was a volunteer. The Town proffers, in the alternative, that Doty was an employee under the IIA because she received wages for her services, was under the direction and control of the Town, and is a public officer.

■ ¶19 The initial inquiry, in defining volunteer, is the relevancy of the specific exclusion of volunteer fire fighters from the definition of " 'volunteer' " in RCW 51.12.035(2). The legislature enacted RCW 51.12.035(2) with the intent to provide limited medical aid benefits to local government and nonprofit volunteers. When the legislature did so, volunteer fire fighters had been similarly covered under the VFFA for 40 years. *See* LAWS OF 1945, ch. 261, *codified at* ch. 41.24 RCW; *see also* LAWS OF 1935, ch. 121, *repealed by* LAWS OF 1945, ch. 261, § 27. The exception of volunteer fire fighters from this subsection was logically a consequence of the similar benefits already provided by the VFFA. *See* RCW 51.12.035(2) (excepting "fire fighters *covered* by chapter 41.24 RCW" (emphasis added)).[3] In fact, the legislature's intentional reference to and exclusion of vol-

---

[3] RCW 51.12.035(2) excepts only volunteer fire fighters "covered" by the VFFA. If a factual scenario arose, which is admittedly not readily conceivable, where a volunteer fire fighter was not covered by the VFFA, he or she would presumably be entitled to medical aid benefits under RCW 51.12.035(2). In other words, the subsection excepts only volunteer fire fighters as a consequence of the fact that they are presently separately covered.

unteer fire fighters from this provision implies that the legislature, in other circumstances, conceptualizes volunteer fire fighters as volunteers and not employees and/or workers. If the legislature considered volunteer fire fighters employees, its reference to them in the context of "volunteers" would have been odd and meaningless. RCW 51-.12.035. Thus, despite their exception from the medical aid benefit provision for general volunteers, volunteer fire fighters remain volunteers under the IIA as long as they meet the definition and are not, by their status or compensation, employees and/or workers covered by the IIA.

■ ¶20 Therefore, while not applicable to the facts here, RCW 51.12.035(2) remains relevant as it conveys the legislature's intent with regard to the definition of nonemployee volunteers. Specifically, a nonemployee "volunteer" constitutes someone who provides services (1) by his or her "own free choice" and (2) "receives no wages." *Cf.* RCW 51.12.035(2). A volunteer retains his or her volunteer status even if "he or she [is] granted maintenance and reimbursement" for necessary incidental expenses. *Id.* Of course, such a person must also not meet the IIA's definition of an " '[e]mployee' " and/or " '[w]orker.' " RCW 51-.08.180, .185.

¶21 The determinative issue becomes whether, in this instance, Doty's service as a volunteer fire fighter constituted an employment covered by the IIA or volunteer service. The IIA instructs that " '[w]orker[s]' " encompass "every person . . . who is engaged in the employment of an employer." RCW 51.08.180(1). "[E]mployment," in turn, constitutes "services performed by an individual for remuneration." RCW 51.08.195. Additionally, the IIA instructs that "[w]henever . . . any municipal corporation . . . shall engage in any work, or let a contract therefor, *in which workers are employed for wages*, this title shall be applicable thereto." Former RCW 51.12.050 (1999) (emphasis added), *amended by* LAWS OF 2001, ch. 138, § 2. These definitions reflect the commonsense notion that volunteers and employees are mutually exclusive categories with jux-

taposed definitions. Thus we examine first whether the stipend and statutory benefit premiums paid by the Town constitute sufficient remuneration or wages within the contemplation of the IIA, second whether Doty volunteered her services of her own free choice, and finally whether Doty is a public officer, and on that basis alone, an employee under the IIA.

¶22 *Wages under the IIA*: The IIA sets forth in detail how wages are calculated but does not definitively establish a definition of what constitutes "wages."[4] According to RCW 51.08.178, "wages" refer to the "hourly," "daily," or "monthly" "wage" that the employee "receive[s]" from the employer as part of the contract of hire."[5] RCW 51-

---

[4] The IIA discusses "wages" in the following section:

(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. . . .

. . . .

The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsection (2) of this section. . . . The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.

(2) In cases where . . . the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

. . . .

(4) In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed.

RCW 51.08.178.

[5] Of course, whether an employee is actually an hourly employee or a salaried employee is of no consequence under the IIA. *See* RCW 51.08.178(1) (providing for calculations based alternatively on the monthly, daily, or hourly wage, instructing that "tips shall also be considered wages," and providing calculations for part-time and intermittent employees and allowing the use of averaging to compute a fair and reasonable wage).

.08.178(1). Whether salaried or paid hourly, "wages," simply stated, refer to the monetary remuneration for services performed. *Id.* Significantly, wages under the IIA are juxtaposed with moneys that may be provided volunteers under the IIA, that is "maintenance and reimbursement for actual expenses necessarily incurred in performing his or her assigned or authorized duties." *See* RCW 51.12.035(1), (2), .140(1)(c), .170.

¶23 First, do the $6 per call and $10 per drill stipends paid by the Town to its volunteer fire fighters constitute wages under the IIA? In light of our Minimum Wage Act, chapter 49.46 RCW, it is highly unlikely that our legislature would consider the stipend the Town paid Doty as constituting remuneration for the fire fighting services she performed. Doty received the same small stipend amount regardless of the duration of the call and the extent of the services performed. This is not remuneration for her services but more reasonably, maintenance and reimbursement for expenses incurred in performing her assigned duties, such as reimbursement for travel and food expenses a volunteer inevitably incurs in responding to calls.

¶24 Second, does the portion of the VFFA premiums paid by the Town constitute wages under the IIA? The VFFA mandates that local governments using volunteer fire fighters "shall make provision by appropriate legislation . . . [to] provid[e] protection for all its fire fighters and their families from death, sickness, injury, or disability arising in the performance of their duties as fire fighters." RCW 41-.24.020(1). It also establishes that local governments "may make provision . . . allowing any member of its fire department to enroll under the retirement provisions" of the VFFA. RCW 41.24.020(2). The record reflects that the Town paid premiums on Doty's behalf for both death and disability benefits and retirement pensions. Clerk's Papers at 194.[6]

---

[6] The record provides little detail, but Doty does not dispute the Town's payments of VFFA premiums.

¶25 The Town asserts that *Cockle v. Department of Labor & Industries* instructs that "health benefits must be considered 'wages' " for purposes of the IIA. Resp't's Reply Br. at 13 (citing *Cockle*, 142 Wn.2d at 808). This reliance on *Cockle* is flawed. In *Cockle*, we addressed only what elements of compensation paid to an employee constituted remuneration in the form of " 'the reasonable value of board, housing, fuel, *or other consideration of like nature received from the employer as part of the contract of hire . . . .* ' " *Cockle*, 142 Wn.2d at 805 (quoting RCW 51-.08.178(1)). In so doing, we concluded that employer-provided health benefits were "core, nonfringe benefits critical to protecting the basic health and survival of workers" (*id.* at 823) constituting other " 'consideration of like nature.' " *Id.* at 805 (emphasis omitted) (quoting RCW 51.08.178(1)). However, the disability, sickness, injury, and death benefits provided under chapter 41.24 RCW are not analogous to the "full health care coverage" provided in *Cockle. Id.* at 811. These statutory benefits are more akin to limited disability and life insurance provisions and arise *only* if the "death, sickness, injury, or disability *aris*[*es*] *in the performance of their duties as fire fighters.*" RCW 41.24.020(1) (emphasis added). The VFFA does not provide comprehensive medical insurance coverage and could be better, albeit crudely, described as reimbursement for expenses incurred in the performance of duties. As such, the statement the Town relies on from *Cockle* is inapplicable in this instance.[7] These potential benefits do not represent any " 'lost earning capacity' " of a volunteer fire fighter, *see Cockle*, 142 Wn.2d at 822 (quoting *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997)), but are simply insurance in the event of injury or death. They are not remuneration for services performed.

---

[7] In fact, in *Gallo v. Department of Labor & Industries*, this court held that, again when calculating compensable " 'wages' " or " 'other consideration of like nature,' " payments for "life insurance" and payments for "disability insurance" were properly excluded from the wage calculation. 155 Wn.2d 470, 474, 493, 120 P.3d 564 (2005).

¶26 A separate question is whether the permissible pension benefits allowable under the VFFA, for which the Town paid premiums, constitute remuneration for services performed. The VFFA provides pension benefits for volunteer fire fighters who have served a minimum of 10 years. *See* RCW 41.24.170. Amicus L&I urges this court, rather than looking to whether the Town provided Doty with " 'wages' " under the IIA, to discern whether the Town provided "valuable consideration in any form [in] exchange[ ] for labor." Br. of Amicus L&I at 10.[8] It then asserts that "providing monetary pension benefits based on years of service" should be rightfully considered as "deferred compensation for services rendered." *Id.* at 14.

¶27 It is true that a bare analysis of the monetary wages provided may be insufficient. *Cf. Bolin v. Kitsap County*, 114 Wn.2d 70, 72, 76, 785 P.2d 805 (1990) (in determining whether juror was employee of county we made no inquiry into the sufficiency of wages). Additionally, it is true that in *Cockle*, upon which the parties heavily rely, and more recently in *Gallo v. Department of Labor & Industries*, 155 Wn.2d 470, 120 P.3d 564 (2005)), we dealt with a different issue than that presented here, i.e., the calculation of benefit payments, not the disputed classification of an injured individual.

¶28 Nevertheless, *Cockle*'s and *Gallo*'s characterization of certain consideration as wages remains relevant by analogy. Wages, broadly defined as remuneration for services performed, remains a crucial distinguishing feature between volunteers and employees and/or workers under the IIA. In that vein, *Cockle* and *Gallo* remain instructive. Relevant here, in *Gallo* we rejected the inclusion of retirement benefits in calculating lost wages and consideration of like nature because they were not immediately available to the worker and "not critical to the 'basic health and survival' of the injured worker at the time of injury." *Gallo*, 155

---

[8] Amicus L&I agrees that "true volunteers are not workers" and that the IIA permits volunteers to receive reimbursement and maintenance expenses. Br. of Amicus L&I at 11-12.

Wn.2d at 491. In short, pension benefits do not qualify as consideration like in nature to IIA wages.

¶29 Moreover, as is immediately evident from the structure of RCW 41.24.170, a volunteer's receipt of any pension benefits under the VFFA is highly speculative. RCW 41-.24.170 permits pension benefits "whenever any participant has been a member and served honorably for a period of ten years or more" and provides a calculation based on length of service. The speculative nature of the statutory pension benefits, and the fact that they are not immediately available to an injured volunteer, counsels against defining them as wages or remuneration.

¶30 This case provides an excellent example of why these highly speculative benefits should not be considered wages under the IIA. Here, there is no indication in the record that Doty in fact worked the minimum 10 years and thus will ever be eligible for a VFFA pension. To hold that this speculative and now possibly unattainable benefit alone transforms Doty from a volunteer into an employee would create an absurd result, and one not likely intended by the legislature. The legislature's contrary intent is evident in the fact that under the IIA, volunteer fire fighters are generally considered nonemployee volunteers. *Cf.* RCW 51.12.035(2); *see supra* at 540. To hold Doty is an employee under the IIA, in this instance, would be to say that the Town compensated Doty for her services, when Doty will possibly never be eligible for the pension benefits alleged to transform her status. We hold that the Town did not provide Doty with wages or remuneration for services performed so as to render her a worker and/or employee.

¶31 *Exercise of Free Choice*: Next, we turn to the second definitional element of a " 'volunteer,' " that is whether he or she performs services "brought about by [his or her] own free choice." RCW 51.12.035(2). In this regard, the Court of Appeals' conclusion that Doty did not receive wages and therefore is not covered by the IIA is analytically incomplete. For example, in *Bolin*, this court held that an individual injured while commuting home from jury

service was an employee of the county and thus covered by the IIA. 114 Wn.2d at 71, 76. We so held despite the fact that the county paid the juror only $10.00 per day and reimbursed him for his travel expenses at a rate of 20.5 cents per mile. *Id.* at 71. In fact, in holding that the juror was a covered employee, we did not even address whether the compensation constituted wages under the IIA. Rather, we found that the juror's service was "involuntary" and as a juror he was "under a superior court judge's control." *Id.* at 72-73, 76 (citing Robert A. Naragon, Note, *Jurors as Nonvoluntary Employees under Workmen's Compensation Law*, 74 DICK. L. REV. 334, 334-46 (1969)). Recognizing that the doctrine of judicial immunity prevented a common law tort action, we found that rejecting the existence of an employee-employer relationship would "deprive[ ] [the juror] of his only means of redress." *Id.* at 73-74. In sum, it was Bolin's involuntary status, coupled with the superior court's right to control, that rendered him an employee. We, thus, must also address this second factor of right to control.

¶32 The determinative "involuntary" nature of juror services readily distinguishes *Bolin* from the case at hand. *See contra Bolin*, 114 Wn.2d at 73-74. Here, Doty's service was unquestionably voluntary, as "[she] had the freedom to choose whether or not she would respond to any given alarm or attend any given drill," and the Town "had no control over when, or even if [she] would perform volunteer fire fighting services." Reply Br. of Appellant at 4.[9]

¶33 Despite the proper characterization of Doty's services as voluntary rather than involuntary, the Town nevertheless asserts that Doty does not perform services by her "own free choice," *cf.* 51.12.035(2), but rather subject only to the Town's "right to control [Doty's] performance of . . . duties." Resp't's Reply Br. at 10 (citing *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 555, 588 P.2d 1174 (1979)). In support of this position the Town cites

---

[9] The Town does not dispute Doty's characterization in this regard.

a state statute dealing with volunteer fire fighters which instructs that they serve " 'under the direction or general orders of the chief . . . in accordance with the rules and regulations of the fire department.' " *Id.* at 11 (quoting RCW 41.24.010(5)). However, this misses the point. Of course, any fire department is dependent upon adherence to rules and regulations for the safe and efficient performance of duties. In fact, nearly all volunteers are subject to the control and supervision of the agency or organization with which they volunteer their services. Doty exercised her "free choice" when she voluntarily made the effort to join the Town's volunteer fire fighter department and then, at her own discretion, elected when to respond to calls and whether to attend drills. Doty volunteered her services, without expectation of remuneration, of her own free choice and absent any compulsion on the part of the Town. *Contrast Bolin,* 114 Wn.2d at 72.

¶34 In sum, Doty meets the definition of volunteer drawn from RCW 51.12.035(2). The Town did not provide Doty with remuneration for her volunteer fire fighting services, and she volunteered her services of her own free choice.

¶35 *Volunteer Fire Fighters as Public Officers*: Lastly, the Town relies on RCW 51.08.185, enacted in 1972, to assert that volunteer fire fighters are employees under the IIA by virtue of their status as public officers.

¶36 In 1972, the legislature amended the IIA to clarify that "all officers of the state, state agencies, counties, municipal corporations, or other public corporations, or political subdivisions" are to be included within the IIA's definition of an " '[e]mployee[ ].' " Laws of 1972, 1st Ex. Sess., ch. 43, § 4, *codified at* RCW 51.08.185. While the Town relies on this section and an attorney general opinion opining that volunteer fire fighters are in fact "public officers," *see* 1973 Attorney General Opinion No. 24, to assert that volunteer fire fighters are employees under the IIA, this assertion is flawed. RCW 51.08.185 merely instructs that " '[e]mployee' shall have the same meaning as

'worker,' " and public officers are to be included and not excluded from such definition. This enactment simply eradicated the antiquated common law distinction between general employees and public officer employees. *See, e.g.,* *Johnson v. Pease*, 126 Wash. 163, 167, 217 P. 1005 (1923) (in 1923 this court commented that "[a] city fireman, instead of being considered an employee of a city, is in fact a public officer and engaged in a governmental duty"); *see also* 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 78.03 (2004). The current IIA makes no such distinction and therefore such employees now fall under its provisions. RCW 51.08.185 still instructs that employees must be " 'worker[s]' " under the statute and thus does not purport to create a classification of covered public officers who would not otherwise be considered workers or employees under the IIA.[10] Because we determined above that Doty is a volunteer and not an employee and/or worker under the IIA, her mere status as a volunteer fire fighter does not change this determination nor our holding.[11]

## IV

¶37 We affirm the Court of Appeals and hold that the IIA does not cover nonemployee volunteers, and these volunteers are not subject to the IIA's bar on civil suits. We additionally hold that the stipend and VFFA premiums paid by the Town do not constitute remuneration for services and that Doty performed fire fighting services of her own free choice and thus conclude that Doty is a volunteer and not an employee and/or worker under the IIA. As such Doty is not subject to the IIA's exclusive remedy provision, and the IIA does not provide the Town with immunity from civil

---

[10] Based on this conclusion we decline to address whether 1973 Attorney General Opinion No. 24 is correct in opining that volunteer fire fighters are in fact public officers.

[11] Our decision today renders moot the issue raised by L&I as amicus in this case—that is whether RCW 51.12.050(3) precludes Doty from IIA benefits and what effect this has on IIA employer immunity. *See supra* note 1.

suit. We remand this case to the superior court for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.